IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| PLAINTIFF A, PLAINTIFF B, PLAINTIFF C, and PLAINTIFF D, | : : : |
| Plaintiffs, | : : |
| v. | : CIVIL ACTION : NO. 2:11-CV-00145-WCO : |
| RICHARD WAYNE SCHAIR and WET-A-LINE TOURS, LLC, | : : : |
| Defendants. | : |

## ORDER

The court has before it for consideration "Plaintiff's Motion to Lift Stay and Incorporated Memorandum of Law in Support" [15] and Defendants' Motion to Seal" [18].

**I.    Factual and Procedural Background**

On June 14, 2011, plaintiffs initiated this action seeking damages for violations of the Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. § 1591, *et seq.* ("TVPA"). In their complaint, plaintiffs allege defendant Richard W. Schair ("Schair") engaged in "sex tourism" in the Amazon River Basin in Brazil through his company, Wet-A-Line Tours, LLC. Defendants' agents and employees recruited young, impoverished Brazilian women, many of whom were under 18 years of age,

to accompany their customers on the tours. Once on the boat, these young women were allegedly coerced into performing sexual acts with Schair and his customers.

On July 7, 2011, Schair moved for a mandatory stay of this action under 18 U.S.C. § 1595(b)(1). (Def.'s Mot. Stay, ECF No. 6.) Section 1595(b)(1) states that "[a]ny civil action filed under this section shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." 18 U.S.C. § 1595(b)(1). Further, the statute clarifies that "criminal action" includes "investigation and prosecution and is pending until final adjudication in the trial court." *Id.* § 1595(b)(2).

In his motion, Schair claimed that this civil action was counterpart to two ongoing criminal actions arising from the same illicit conduct. One was a criminal prosecution in the Brazilian criminal courts and the other was a federal criminal investigation in the Southern District of Florida. As evidence of these criminal actions, Schair submitted a copy of the Brazilian "Denounciation" and an English translation thereof, as well as subpoenas sent to Schair's ex-wife and Wet-A-Line Tours for purposes of a grand jury investigation from an Assistant United States Attorney in the Southern District of Florida. (Def.'s Mot. Stay Exs. A–D, ECF No. 6.) Plaintiffs acknowledged that a federal criminal investigation into Schair's conduct was pending and did not oppose the entry of a stay. After reviewing the evidence

presented by Schair and the language of the statute, the court found a stay was necessary in light of the ongoing federal investigation. Accordingly, the court granted Schair's motion and entered an order staying the case until that criminal action was terminated.

In granting Schair's motion the court left two issues unresolved. First, while the statute clarified that a criminal action included both an "investigation and a prosecution," it failed to establish how a court should determine when a criminal investigation has been initiated or terminated. (Order Defs.' Mot. Stay 4.) The court was troubled by the fact that if a criminal investigation remained pending indefinitely, it could effectively foreclose any civil suit arising out of the same occurrence as the subject of the investigation. (*Id.*) Because both parties conceded that a criminal action is currently pending in Florida, there was no need to decide this issue. (*Id.* at 5.) However, the court noted that "[a]t some point during this litigation, particularly if the investigation in this case does not proceed to a prosecution, the court will need to decide when and if a criminal investigation is no longer pending." (*Id.* at 4–5.)

Second, the court noted that due to the existence of the federal investigation in Florida, it was unnecessary to decide whether a mandatory stay should issue under the statute when a criminal investigation or prosecution was pending in the courts of a foreign sovereign. (*Id.* at 6.) If the court was eventually forced to address this issue,

3

it noted that it "would require further argument before it could conclude that a foreign criminal proceeding would mandate a stay in this court." (*Id.*) On July 10, 2012, almost one year after the court's order, plaintiffs filed the instant motion seeking to lift the stay. This motion requires the court to revisit these unresolved issues.

## II.   Motion to Stay

### A.   The Federal Criminal Investigation

At the time plaintiffs filed their motion to lift the stay, it was still unclear whether the federal government intended to prosecute either defendant. Almost three years had passed since the government issued a subpoena to defendant Wet-A-Line Tours, LLC, (Pls.' Mot. Lift Stay 3) and almost two years had passed since the United States Attorney's office informed Schair's ex-wife that it was investigating Schair's conduct. (Defs.' Resp. Pls.' Mot. Lift Stay 4 n.4.) Although the passage of time suggested that no criminal prosecution would be forthcoming, the United States Attorney had not responded to plaintiffs' inquiries and neither party had obtained any definitive evidence that the federal investigation had come to a close.

However, on November 13, 2012, plaintiffs filed a status report concerning the stay of the case. In that status report, plaintiffs stated that "Defendants' counsel has informed Plaintiffs' counsel that he has been told that the U.S. Department of Justice has decided not to prosecute the Defendants." (Interim Status Report, ECF No. 30.)

This new information conclusively establishes that the federal criminal action is no longer pending against the defendants. Thus, the stay may be lifted unless the statute requires the court to impose a stay due to the criminal investigation and prosecution in Brazil. 18 U.S.C. § 1595(b)(1).

### B.   The Criminal Prosecution in Brazil

Defendants have submitted documentation, including the affidavit of Schair's criminal defense lawyer in Brazil, which establishes that the Brazilian criminal investigation is still ongoing and will likely proceed to trial. (*See* Defs.' Resp. Pls.' Mot. Lift Stay Ex. A, 1–3). The exhibits attached to this affidavit are the subject of the pending Motion to Seal. While plaintiffs acknowledge that a criminal investigation is pending in Brazil, they argue that the legislative history underlying the statute suggests that the stay provision does not encompass foreign criminal proceedings. (*Id.* at 6.) Specifically, plaintiffs argue that the legislative history underlying the provision does not mention foreign prosecutions and suggests that the private cause of action was added to strengthen the *U.S.* government's ability to combat sex and human trafficking. Further, plaintiffs note that the word "any" is used in the same statutory section to refer to "any civil action" filed in a "district court of the United States." 18 U.S.C. § 1595(a)–(b). Accordingly, plaintiffs argue it would be "counterintuitive for a section which is limited to U.S. civil actions to include, for

5

the purposes of a stay, criminal actions and investigations in foreign jurisdictions." (Pl.'s Reply 6–7.)

In response, defendants argue that the use of the word "any" to modify "criminal action" suggests that "criminal action" should be interpreted to mean both foreign and domestic prosecutions. (*Id.* at 10–11.) As additional support for this inference, defendants point to 18 U.S.C. § 1596, which establishes the extra-territorial jurisdiction of the United States to prosecute sex and human trafficking offenses. (*Id.* at 13.) This provision also recognizes the right of foreign governments to prosecute the offenses listed in 18 U.S.C. § 1591 and if a foreign prosecution is ongoing, prohibits the United States government from prosecuting such offenses without the Attorney General's express approval. 18 U.S.C. § 1596.

There is no case law directly addressing whether or not the stay provisions of the TVPA extend to criminal actions in foreign jurisdictions, and both parties present valid arguments on whether the statutory language mandates stays in civil proceedings regardless of where the criminal prosecution occurs. Accordingly, the court must engage in statutory construction to determine whether or not to impose a stay due to the criminal action in Brazil.

When interpreting a statute, a court's analysis must be guided by traditional canons of statutory construction. First, the court considers the language of the statute

itself.  The court "assume[s] that Congress used the words in a statute as they are commonly and ordinarily understood, and [reads] the statute to give full effect to each of its provisions.  [It does] not look at one word or term in isolation, but instead [looks] to the entire statutory context."  *Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206, 1212 (11th Cir. 2010) (citations omitted).  A court "will only look beyond the plain language of a statute at extrinsic materials to determine the congressional intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent."  *Id.* at 1212–13.

The plain language of the statute states that "*[a]ny* civil action filed under this section shall be stayed during the pendency of *any* criminal action arising out of the same occurrence in which the claimant is the victim."  18 U.S.C. § 1595(b)(1). Defendants argue that the plain meaning of "any" means "any and all" and thus would include criminal prosecutions in foreign jurisdictions such as Brazil.  However, when engaging in statutory interpretation, a court does "not look at one word or term in isolation, but instead [looks] to the entire statutory context."  *Harrison*, 593 F.3d at 1212. Here, the word "any" appears in a section authorizing a civil cause of action "in an appropriate district court of the United States."  15 U.S.C. § 1595(a).  This

language implies that the following references to civil and criminal actions are to those actions pending *in the United States*.

Contrary to defendants' arguments, the court believes this interpretation is bolstered by the nature of the following section entitled "additional jurisdiction in certain trafficking offenses." 15 U.S.C. § 1596. In that section, Congress specifically addresses the extra-territorial jurisdiction of the United States and limits the government's ability to commence federal prosecutions under the TVPA when a foreign criminal prosecution for the same conduct is ongoing. *Id.* § 1596(b). The same year this section was added to the TVPA, Congress *expanded* the scope of the TVPA's civil remedy to permit a civil action against anyone who "knowingly benefits" from a violation of the TVPA. Congress did not, however, amend the statute to clarify that civil proceedings must also be stayed when a foreign criminal prosecution is pending. Thus, the statutory language as a whole suggests that the stay provision was designed to address situations involving federal criminal prosecutions, not criminal prosecutions occurring around the globe.

Additionally, the legislative history underlying the TVPA's stay provision supports an interpretation that "any" is limited to any *federal* criminal prosecution. The stay provision was added to address the Department of Justice's concern that civil suits could hinder a *federal* prosecutor's ability to try criminal cases "unfettered by

8

the complications of civil discovery." H.R. Rep. 108–264(II).[1]  Rather than dropping the civil cause of action altogether as the Department of Justice suggested, Congress determined "that the additional enforcement activity resulting from private civil actions [was] worthwhile." *Id.*  Due to the efforts of advocates, Congress was persuaded that a private right of action would address the "inherent limitations in a prosecution-based approach to the problem of human trafficking." Kathleen Kim, *Human Trafficking Private Right of Action: Civil Rights for Trafficked Persons in the United States*, 16 Hastings Women's L.J. 1, 1 (Winter 2004).

Finally, the general presumption underlying Congressional legislation is that "Congress generally legislates with domestic concerns in mind." *Small v. United States*, 544 U.S. 385 (2005).  This leads to "the legal presumption that Congress

---

[1] The statute as drafted included only subsection (a) of 1595.  The letter from the Department of Justice resulted in the addition of subsections (b) and (c).  The letter stated:

> The subsection should stay all pending civil actions in the wake of a criminal prosecution. . . . Without delineating who can be sued and whether the suit would be stayed until a prosecution was complete, this provision would provide unbridled discretion to trafficking victims to sue whomever they feel has victimized them and could hinder prosecutors' abilities to try a case unfettered by the complications of civil discovery.  While perhaps unlikely, this provision could become an incentive for victims to skip criminal prosecution and go directly to Federal court to sue their traffickers for damages. We believe that prosecutions should take priority over civil redress and that prosecutions should be complete prior to going forward with civil suits.

H.R. Rep. 108–264(II).

ordinarily intends its statutes to have domestic, not extraterritorial, application." *Id.* Although this presumption usually arises when courts are considering whether to apply federal law extraterritorially and not when they are considering whether to impose a stay, this general presumption suggests that the Congressional intent underlying the TVPA and its stay provision stems from domestic rather than international concerns. And, while human trafficking is an international problem with international consequences, other courts have recognized that "[t]he international dimensions of the problems of trafficking and forced labor do not support a departure from the usual presumption against extraterritorial application . . . Congress has been acquainted with the question of international reach in this context for more than 200 years. Congress knows how to legislate with extraterritorial effect in this field. It has done so expressly when it has intended to do so." *John Roe I v. Bridgestone Corp.*, 492 F.Supp.2d 988, 1002 (S.D. Ind. 2007). The statutory language and the legislative intent underlying the TVPA and its stay provision make clear that the TVPA does not mandate a stay of a civil case while a foreign criminal prosecution is ongoing. As the federal criminal investigation is no longer pending, the court **GRANTS** plaintiffs' motion to lift the stay.

### III.     Motion to Seal

In support of their response to plaintiffs' motion to stay, defendants submitted the affidavit of Aniello Aufiero, Schair's Brazilian defense attorney (the "Affidavit"). The Affidavit was accompanied by three exhibits regarding the Brazilian prosecution, which included (1) the indictment presented to the Brazilian court on February 2, 2011 ("Exhibit 1"); (2) a document returned by the Federal Justice on April 28, 2011, authorizing prosecution on the indictment ("Exhibit 2"); and (3) the first and last page of Schair's 41-page responsive pleading ("Exhibit 3") (collectively, the "Exhibits"). Contemporaneously with submitting the affidavit, defendants filed a motion pursuant to Federal Rule of Civil Procedure 7 seeking to file the Exhibits under seal.  The court is generally reluctant to seal documents filed with the court due to the presumption in favor of public access. *See Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (noting the common-law right of access to judicial proceedings is an essential component to the justice system and instrumental in securing the integrity of the judicial process).  However, due to the unique circumstances at issue in this case, the court believes it prudent to defer ruling on defendants' motion until the case has been further developed.

## IV. Conclusion

For the foregoing reasons, plaintiffs' "Motion to Lift Stay" [15] is hereby **GRANTED**.  Consideration of defendants' "Motion to Seal" [18] is hereby **DEFERRED** until a later date.

**IT IS SO ORDERED**, this 28th day of November, 2012.

s/*William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge
