IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|                                      |   |                        |
|--------------------------------------|---|------------------------|
| PLAINTIFF A, PLAINTIFF B, PLAINTIFF C, and PLAINTIFF D, | | |
| Plaintiffs | | |
| v. | | CIVIL ACTION NO. 2:11-CV-00145-WCO |
| RICHARD WAYNE SCHAIR and WET-A-LINE TOURS, LLC, | | |
| Defendants. | | |

## MOTION TO DISMISS

**COMES NOW, Defendant** Richard Wayne Schair, hereinafter "Defendant", by and through undersigned counsel, and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, files this, his MOTION TO DISMISS. In support of said Motion, Defendant shows this Court the following:

## FACTUAL BACKGROUND

On June 14, 2011, Plaintiffs initiated this action seeking damages for alleged violations of the William Wilberforce Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1581-1597 ("TVPRA"), which is an amendment to the Victims of Trafficking and Violence Protection Act, 18 U.S.C. §§ 1581-1594 (2000) ("TVPA"). In their complaint ("Complaint"), Plaintiffs allege that Defendant and his co-defendant company, Wet-A-Line

Tours, LLC, ("Wet-A-Line") engaged them in "sex tourism" while in the Amazon River Basin in Brazil. Complaint, ¶3. Specifically, Plaintiffs allege that the defendants violated 18 U.S.C. § 1591 of the TVPRA ("§ 1591") when they "participated in the obtainment, recruitment, and harboring of minors, under the age of eighteen years to engage in commercial sex acts through the use of fraudulent and coercive means." Id., ¶7. Additionally, Defendant is alleged to have "knowingly received financial benefits and other things of value as a result of the above-described actions of Wet-A-Line," thus making Defendant liable to the Plaintiffs under 18 U.S.C. § 1595 ("§ 1595"). Id. These events are alleged to have occurred during the years 2005-2006. Id., ¶¶42-50.

### STANDARD OF REVIEW

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. Roma Outdoor Creations, Inc. v. City of Cumming, 558 F.Supp.2d 1283, 1284 (N.D.Ga.2008); Gentilello v. Rege, 627 F.3d 540, 543-44 (5th Cir.2010). To preclude dismissal, a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

Cir.2010); <u>Jiles</u>, 413 Fed. App'x at 174 ("dismissal is appropriate where the complaint lacks sufficient factual matter to state a facially plausible claim for relief that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct."). In applying this standard, factual allegations are accepted as true, but the same benefit is not afforded to bare "legal conclusions." <u>JP Morgan Chase Bank, N.A. v. Sampson</u>, 1:10-CV-1666-JEC, 2012 WL 949698 (N.D. Ga. Mar. 20, 2012) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)).

## **DEFENDANT'S MOTION**

Defendant moves this Court to dismiss the Complaint as a matter of law. Plaintiffs allege that Defendant violated § 1591 of the TVPRA and is thus liable to them for damages under § 1595 of the TVPRA. However, the alleged events, which provide the basis for all of Plaintiffs' claims, occurred **prior** to December 23, 2008, the effective date of the 2008 amendments to the TVPRA. Moreover, the 2008 amendment to the TVPRA vastly expanded an individual's potential criminal and civil liabilities, and the newly criminalized activity constitutes Plaintiffs' legal basis for the pending suit against Defendant. As such, even if the Plaintiffs could prove the claims alleged in the Complaint, said claims are barred by retroactivity.

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

Further, Plaintiffs' claims are also barred because they have not exhausted adequate and available remedies in Brazil, the country where the alleged acts took place. In addition, the doctrine of *forum non conveniens* requires dismissal of Plaintiff's claims in this Court, as Brazil is the proper forum for the resolution of the instant dispute.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Plaintiffs' claims under the TVPRA are barred by the doctrine of retroactivity.

Our federal courts employ a robust presumption against statutory retroactivity in civil cases, under which they assume that statutes are only intended to operate prospectively, to govern future conduct and claims, instead of retroactively, to reach conduct and claims arising before the statute's enactment without express Congressional intent.[1] See Landgraf v. USI Film Prods., 511 U.S. 244, 265, 269-70 (1994)); see also Elat v. Ngoubene, CIV. PWG-11-2931, 2014 WL 253411 (D. Md. Jan. 21,

---

[1]  Of course, if this were a criminal case, the Ex Post Facto Clause of the United States Constitution would govern and clearly preclude retroactivity, irrespective of Congressional intent. U.S. Const, art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."). See also California Department of Corrections v. Morales, 514 U.S. 499, 504 (1995)("the Clause is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'")(quoting Collins v. Youngblood, 497 U.S. 37, 41 (1990)); Galvan v. Press, 347 U.S. 522, 531 (1954).
  Federal courts have similar concerns about the retroactive application of laws in the context of military commissions that try war crimes. See, e.g., Hamdan v. United States, 696 F.3d 1238, 1247 (2012). (finding no retroactive operation of statute charging Al Qaeda member with war crimes committed prior to its enactment because retroactive prosecution by the military could raise constitutional issues similar to those posed by the Ex Post Facto Clause).

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

2014) (quoting <u>Ward v. Dixie Nat. Life Ins. Co.</u>, 595 F.3d 164, 172 (4th Cir.2010). This presumption "'is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.'" <u>Ward</u>, 595 F.3d at 172 (quoting <u>Landgraf</u>, 511 U.S. at 265, 269-70). Because Plaintiffs rely on a provision of a statute that was enacted ***after*** Defendant's alleged criminal activity ended, and Congress provided no indication that the this provision should operate retroactively—either in the language of the statute itself or in its legislative history—there cannot be an ex post facto application of the TVPRA.

A. **History of the TVPA and TVPRA**

The TVPA was enacted on October 28, 2000 "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub.L. 106-386, Div. A, §§ 102(a) & 112(a)(2). As relevant here, when enacted, § 1591 established that a person commits the offense of sex trafficking when they:

(a) Knowingly –
    (1) in or affecting interstate commerce, recruits, entices, harbors, transports, provides, or obtains by any means a person; or
    (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

    knowing that force, fraud, or coercion described in subsection (c)(2) will be used to cause the person to

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

> engage in a commercial sex act, or that the person has
> not attained the age of 18 years and will be caused to
> engage in a commercial sex act . . .
>> . . .
> (c) In this section:
>> . . .
>> (2) The term 'coercion' means—
>>> (A) threats of serious harm to or physical restraint
>>>     against any person;
>>> (B) any scheme, plan, or pattern intended to cause a
>>>     person to believe that failure to perform an act
>>>     would result in serious harm to or physical
>>>     restraint against any person; or
>>> (C) the abuse or threatened abuse of law or the legal
>>>     process.

18 U.S.C. § 1591 (2000).

In 2003, Congress passed the TVPRA, amending the TVPA, in order to "enhance provisions on prevention of trafficking, protection of victims of trafficking, and prosecutions of traffickers." H.R.Rep. No. 108-264(I), at 8 (2003), 2004 U.S.C.C.A.N. 2408, 2408. In particular, Congress created a private right of civil action for victims of trafficking under § 1595. As enacted, § 1595 provided that:

> (a) An individual who is a victim of a violation of section
>     1589, 1590, or 1591 of this chapter may bring a civil
>     action against the perpetrator in an appropriate district
>     court of the United States and may recover damages and
>     reasonable attorneys fees. . ..

18 U.S.C § 1595 (2003).

Thereafter, Congress amended the TVPRA, effective December 23, 2008, wherein the reach of both §1591 and §1595 were expanded. Relevant to this case, the amended provisions of §1591 are now as follows:

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

(a) Whoever knowingly –
. . .
    (2) benefits, financially or by receiving anything of
        value, from participation in a venture which has
        engaged in an act described in violation of paragraph
        (1),
        knowing, *or in reckless disregard of the fact, that
        means of force, threats of force, fraud, coercion
        described in subsection (e)(2), or any combination of
        such means* will be used to cause the person to engage in
        a commercial sex act . . .
        . . .
*(c) In a prosecution under subsection (a)(1) in which the
defendant had a reasonable opportunity to observe the
person so recruited, enticed, harbored, transported,
provided, obtained or maintained, the Government need not
prove that the defendant knew that the person had not
attained the age of 18 years.*
        . . .
(e) In this section:
    . . .
    (3) The term 'coercion' means—
        (A) threats of serious harm to or physical restraint
            against any person;

            . . .
    *(4) The term "serious harm" means any harm, whether
    physical or nonphysical, including psychological,
    financial, or reputational harm, that is sufficiently
    serious, under all the surrounding circumstances, to
    compel a reasonable person of the same background and
    in the same circumstances to perform or to continue
    performing commercial sexual activity in order to
    avoid incurring that harm.*

            . . .

18 U.S.C. § 1591 (2008) (emphasis added).

    Additionally, the amended provisions of §1595 are now as

follows:

(a) An individual who is a victim of a violation of this
    chapter may bring a civil action against the perpetrator
    of this chapter *(or whoever knowingly benefits,
    financially or by receiving anything of value from
    participation in a venture which that person knew or
    should have known has engaged in an act in violation of*

7

> **this chapter)** in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.
> . . .

18 U.S.C § 1595 (2008) (emphasis added).

It is clear that, with these changes, § 1591 substantially expanded the crime of sex trafficking by removing the knowledge-of-age requirement in certain instances involving minors and lowering the standard of proof to "reckless disregard" of the use of force, fraud, or coercion to cause a person to engage in commercial sex. 18. U.S.C. §§ 1591(a)(1), 1591(c). Additionally, § 1591 expanded the crime of sex trafficking by redefining "coercion" to now include the definition of "serious harm." 18. U.S.C. §§ 1591(e)(2), 1591(e)(4).

More importantly, it must be noted that the 2008 amendment to § 1595 vastly expanded the civil liability **from** individuals merely found to have been perpetrators of an act described in §§ 1589, 1590, and 1591 **to**: 1) those individuals deemed to be perpetrators of any part of the TVPRA; or 2) someone who knowingly benefited from the human trafficking proscribed therein. 18. U.S.C. § 1595(a).

**B. <u>Plaintiffs do not allege that Defendant violated 18 U.S.C. §§ 1591, 1595 after the effective date of the 2008 amendment to the TVPRA.</u>**

Plaintiffs cite §§ 1591 and 1595 of the 2008 TVPRA in their Complaint. However, the dates alleged for the conduct complained

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

of occurred during the years 2005-2006. Complaint, ¶¶42-50. Because these 2008 amendments to the TVPRA did not go into effect until December 23, 2008; and, because "[e]lementary considerations of fairness" dictate that a statute is presumptively not retroactive, <u>Landgraf</u>, 511 U.S. at 265, even if Plaintiffs can prove the conduct alleged, Defendant's liability under § 1595 only extends to them if it can be shown: (1) that they "knowingly benefited" from a violation thereof; (2) that they knew, or should have known, the conduct was ongoing; and, that all of the conduct occurred (3) **after** December 23, 2008. 18 U.S.C. § 1595 (2008).

### 1) Early Case law

In 1913, the United State Supreme Court considered an appeal by a plaintiff who brought a wrongful death action against a railroad company after Congress created a civil remedy allowing such a suit. <u>William H. Winfree v. Northern Pacific Railway Co</u>., 227 U.S. 296 (1913). The statute at issue had been enacted after the plaintiff's cause of action accrued, and the lower courts dismissed the plaintiff's action for this reason. <u>Id</u>. at 300. The Supreme Court affirmed, stating, "[i]t is a statute which permits recovery in cases where recovery could not be had before . . . Such a statute . . . should not be construed as retrospective. It introduced a new policy and quite radically changed the existing law." <u>Id</u>. at 302.

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

## 2) Retroactivity for civil remedies: A Two-Step Analysis

In the landmark case of <u>Landgraf</u>, supra, the Supreme Court held that certain *civil* remedies provided by the Civil Rights Act of 1991 did not apply to actions that occurred prior to the Act's effective date. <u>Landgraf</u>, 511 U.S. at 283. In <u>Landgraf</u>, a female employee was sexually harassed by a male coworker. <u>Id</u>. at 248. The employee later sued her employer in District Court, claiming that the sexual harassment created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. <u>Id</u>. The District Court dismissed the case on the grounds that the employee was not entitled to equitable relief and there were no other forms of relief available to her. <u>Id</u>. at 248-249.

While the employee's appeal was pending, the Civil Rights Act of 1991 was enacted, creating a right to recover compensatory and punitive damages for certain violations, including Title VII, and further provided that any party may demand a jury trial if such damages were sought. <u>Id</u>. at 249. However, the Court of Appeals for the Fifth Circuit affirmed the District Court, finding no clear error in the District Court's findings and rejecting the employee's argument that the case ought to be remanded for a jury trial on damages pursuant to the 1991 Act. <u>Id</u>.

The Supreme Court affirmed. <u>Id</u>. at 247. In doing so, the

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

Supreme Court reconciled two seemingly conflicting canons of statutory construction: first, that a court is to apply the law in effect at the time it renders its decision; and second, that retroactivity is not favored in the law. Id. at 263-264. In its decision, the Court outlined the procedure to be used when a case implicates a federal statute enacted after the events in suit:

> [T]he court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i. e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Id. at 280.

Thus, Landgraf established a two-step analysis for determining whether a newly enacted *civil* cause of action can be applied retroactively: 1) Whether Congress expressly prescribed the statute's proper reach; and 2) Whether the statute, if not so prescribed, nonetheless has a retroactive effect. "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

before its enactment.'" <u>Martin v. Hadix</u>, 527 U.S. 343, 357–58 (1999). These retroactive consequences "in the disfavored sense" are impermissible absent clear Congressional intent. <u>Ditullio v. Boehm</u>, 662 F.3d 1991, 1099 (9th Cir. 2011). If there is no clear Congressional language or intent, yet the statue has a "disfavored" retroactive effect, the statute may not operate retroactively.

### 3) Retroactivity and the TVPA

Interestingly, our federal courts have already ruled on the issue of retroactivity and TVPA. In a case analogous to <u>Landgraf</u>, the United States Court of Appeals for the Ninth Circuit considered whether the civil remedy created in the 2003 version of § 1595 of the TVPRA could apply retroactively to conduct which occurred before the statute's effective date. <u>Ditullio v. Boehm</u>, 662 F.3d 1091, 1099 (9th Cir. 2011). In <u>Ditullio</u>, the plaintiff alleged she was a victim of a human trafficking conspiracy, maintained by the defendant, beginning in late 2001 and continuing until December 22, 2003. <u>Id</u>. at 1095. Although § 1595 did not become effective until December 19, 2003, the plaintiff alleged that, because the defendant's conduct carried over from the pre-enactment date into the post-enactment date of § 1595, the TVPRA's civil remedy could be applied retroactively to the pre-enactment conduct. The Ninth Circuit disagreed.

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

To reach its conclusion, the court applied the two-step analysis outlined in <u>Landgraf</u>. In doing so, the court determined that Congress did not expressly state that § 1595 applied to pre-enactment conduct. <u>Id</u>. at 1099. The Court then determined that, because § 1595 imposed new burdens and consequences on the defendant, ***§ 1595 of the TVPRA could not be applied retroactively***. "Unless Congress has clearly manifested its intent to the contrary," the court noted, "'the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place.'" <u>Id</u>. (citing <u>Landgarf</u>, 511 U.S. at 265). This is because the aim of the presumption is to prevent unnecessary post hoc changes to legal rules that individuals rely upon to shape their personal conduct. <u>Id</u>. See also <u>Doe v. Siddig</u>, 810 F.Supp.2d 127, 136 (D.D.C.2011) (concluding that "permitting private litigants to bring suit under § 1595 for violations of §§ 1589 and 1590 based on conduct predating December 19, 2003 would have an impermissible retroactive effect"); <u>Velez v. Sanchez</u>, 693 F.3d 308, 325 (2d Cir.2012) (concluding that TVPA "civil cause of action does not apply retroactively").

### 4) Retroactivity and the TVPRA

In <u>Elat</u>, supra, a recent TVPRA case involving 18 U.S.C. § 1589 ("§ 1589"), the United States District Court applied the <u>Landgraf</u> framework in determining that the TVPRA, as amended in

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

2008, did not apply retroactively to events that occurred before the amended TVPRA took effect on December 23, 2008. Elat, 2014 WL 253411 at 19. Elat involved a plaintiff who accused the defendant of subjecting her to forced labor from April 2006 until May 2008 under § 1589 and was civilly liable under § 1595. However, again, the 2008 amendments of the TVPRA did not go into effect until December 23, 2008. The court noted that, in applying the Landgraf framework, *Congress did not expressly prescribe the statute's proper reach and there is no clear congressional intent in favor of retroactivity*. Id. Moreover, because the amendments to the TVPRA did not go into effect until 2008, applying the 2008 version of the TVPRA to the alleged events would have triggered the presumption against retroactivity. Id. See also Velez v. Sanchez, 693 F.3d 308, 325 (2nd Cir. 2012)("Nothing in the language of the TVPRA or its legislative history indicates that Congress intended retroactive application. As to the second prong, while criminal liability may have existed prior to the 2003 amendments, the civil remedy added in 2003 fits within the *Landgraf* definition of 'impermissibly retroactive legislation' because it increases a party's liability for previously occurring conduct.).

### 5) Retroactivity in the present case

Applying the Landgraf framework to the current case clearly establishes that, to hold Defendant civilly liable under the

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

2008 version of § 1595 of the TVPRA for knowingly benefitting financially from the alleged human trafficking of the Plaintiffs as indicated in the Complaint would be an impermissible violation of retroactivity. First, there is no language in the original TVPA, nor in the 2008 amendment, that prescribes the statute's reach. <u>See</u> <u>Elat</u>, supra. In fact, the legislative history is silent on whether any of the statutes in the chapter apply to conduct that occurred prior to its effective dates. <u>See</u> <u>H.R. Rep. No. 108-264 Part 1 (2003)</u>; <u>H.R. Rep. No. 108-264 Part 2 (2003)</u> (there are no legislative reports for the 2008 amendment). Moreover, Congress had little debate with regard to the civil remedies in § 1595. ("The legislative reports accompanying the [Trafficking Victims Protection Reauthorization Act] are in fact devoid of any insight into Congress's intentions or expectations in creating the civil remedy." Jennifer S. Nam, THE CASE OF THE MISSING CASE: EXAMINING THE CIVIL RIGHT OF ACTION FOR HUMAN TRAFFICKING VICTIMS, 107 COLUM. L. REV. 1655, 1668 n.81 (2007)). More accurately in this regard is that the legislative reports are devoid of any indication that Congress intended to deviate from the default rule of retroactivity with the enactment of the civil cause of action arising from a § 1595 violation.

Second, the 2008 amendments to §§ 1591 and 1595 of the TVPRA **substantially** *increased* Defendant's criminal and civil

15

liability from what it had been prior to those amendments:

1. § 1595(a) expanded liability from individuals solely deemed a perpetrator of §§ 1589-1591 to individuals deemed either a perpetrator of the entire chapter or individuals who knowingly benefited financially. (the Complaint alleges that under the current § 1595, Defendant knowingly received financial benefits and other things of value from Wet-A-Line's actions of obtaining, recruiting, and harboring minors to engage in commercial sex acts. Complaint, ¶¶ 7, 40, 48, 57, 61, 65.);

2. §§1591(a)and 1591(c) expanded the crime of sex trafficking by removing the knowledge-of-age requirement for instances involving minors.(the Complaint alleges that under the current § 1591, Defendant knowingly and/or in reckless disregard of fact that Plaintiffs were under the age of eighteen obtained and provided for the recruiting of engaging in commercial sexual acts . . .. Complaint, ¶¶3, 10,28, 34-36,61);

3. § 1591(a)(2) lowered the standard of proof from having to "know" to now merely requiring a "reckless disregard" for determining the use of force, fraud, or coercion to cause a person to engage in commercial sex.(the Complaint alleges that under the current § 1591, Defendant knowingly, or in reckless disregard of the fact, that means of force,

16

threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act . . .. Complaint ¶¶3, 7-8, 10, 31, 36, 40, 44-45, 50, 56-57.); and

4. § 1591(e)(2) expands the definition of "coercion" by including a definition of "serious harm" to include "financial harm." (the Complaint uses the newly expanded definition of "coercion" in alleging that Defendant used means of fraud and coercion to recruit, obtain, and harbor the Plaintiffs, who were impoverished and susceptible to financial inducement, for the purpose of engaging in commercial sexual acts. Complaint ¶¶4-8, 10, 15, 37, 40, 61-62.]

Due to these expansions of liability, it is clear that if the statute were allowed to operate retroactively, it would impermissibly "attach new legal consequences to events completed before its enactment," which violates the core principles set out in Landgraf. 511 U.S. at 270. And, while it might have been possible to hold Defendants liable for the conduct alleged in the Complaint had it occurred *after* the effective date of the 2008 amendment to the TVPRA, as the Complaint is currently drafted, Plaintiffs do not allege facts sufficient to show, on its face, that Defendants' pre 2008 conduct can be pursued under the 2008 amendment to the TVPRA.

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

Consequently, to hold Defendant liable for conduct predating the enactment of the TVPRA statue would be an impermissible application of retroactivity. As such, the Complaint should be dismissed as a matter of law.

**II. Plaintiffs have not exhausted adequate and available remedies in Brazil, the country where the alleged acts took place.**

    A. The TVPA (trafficking) is a legal extension of the Torture Victim Protection Act of 1991 ("TVPA"), which has an explicit exhaustion requirement.

In 1789, the first Congress passed the Alien Tort Statute ("ATS"), which is now codified in 28 U.S.C. § 1350 (2000). The statute gives district courts original jurisdiction of "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." Id. The ATS provides jurisdiction over: (1) tort actions, (2) brought by aliens (only), (3) for violations of the law of nations ... including, as a general matter, war crimes and crimes against humanity—crimes in which the perpetrator can be called "*hostis humani generis,* an enemy of all mankind." Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 116 (quoting Filartiga v. Pena-Irala, 630 F.2d 876, 890 (1980)).

In the late 1980s, extrajudicial killings and official torture were at the political forefront globally, as blatant

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

violations of customary international laws were ongoing. <u>Sarei v. Rio Tinto, PLC</u>, 456 F.3d 1069, 1091 (9th Cir. 2006). Amnesty International, one of the primary human rights organizations that vehemently lobbied governments to eradicate state-sanctioned torture, published a report in 1973 to promote its Campaign for the Abolition of Torture. AMNESTY INTERNATIONAL, REPORT ON TORTURE 7 (1973). The report argued that torture was inherently cruel and should be condemned in all instances, yet sixty countries were engaging in state-sponsored torture, such as the Soviet Union, South and Central America, and the occupied territories of the Middle East. <u>Id</u>. In 1984, the United Nations General Assembly took an important step towards the eradication of torture when it held the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment.[2]

A few years later, Congress, responding to international pressures, enacted the Torture Victim Protection Act ("TVPA (torture)") in order to establish an "unambiguous and modern basis for a cause of action that has been successfully maintained under [the Alien Tort Statute]"[3]. Torture Victim Protection Act of 1991, Pub. L. No. 102-256 (1992)(codified at 28 U.S.C. §1350 (2000)). Citing the U.N. Convention in its legislative report, Congress noted that the Convention

---

[2] U.N. G.A. Res. 39/46 Annex, U.N. GAOR, 39th Sess., Supp. No. 51, at 197, U.N. Doc. A/39/708 Annex (1984).

[3] H.R. REP. No. 102-367 (I) (Nov. 25, 1991)(U.S. House of Representatives legislative report)

L. DAVID WOLFE, P.C.• 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

"obligates state parties to adopt measures to ensure that torturers are held legally accountable for their acts. One such obligation is to provide means of civil redress to victims of torture." Congress further noted that although the Alien Tort Statute already grants jurisdiction to provide this redress, the statute was rarely invoked, and when it was, suits were often dismissed by district courts due to lack of clarity about what actually constituted a "violation" of the "law of nations." See, e.g., Flartiga v. Pena-Irala, 630 F.2d 876 (2nd Cir. 1980) (reversing the district court's dismissal of Paraguayan plaintiffs' torture claim under the Alien Tort Statute because, although torture was not recognized as a violation of the "law of nations" in 1789 when ATS was enacted, the universal prohibition on torture was now customary international law). It is critical to note that "[t]he TVPA was codified in the historical notes section of the ATS and was not set apart as a separate statute." Gretchen C. Ackerman, Note, *An Analysis of Whether Aliens Should be Required to Exhaust Local Remedies Before Suing in the United States*, 7 WASH. UNIV. GLOB. STUD. L. REV. 543 (3). Thus, when Congress enacted the TVPA (torture) statute, *they intended for it to function as an extension of the Alien Tort Statute*.

One characteristic of the TVPA (torture) that is **not** found in the Alien Tort Statute is the requirement that plaintiffs

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

first exhaust local remedies before suing in U.S. courts. This requirement "ensures that U.S. courts will not intrude in cases more appropriately handled by courts where the alleged torture or killing occurred. It will also avoid exposing U.S. courts to unnecessary burdens, and can be expected to encourage the development of meaningful remedies in other countries." H.R. REP. No. 102-367 at 5, *reprinted in* 1992 U.S.C.C.A.N. at 87-88. In Sarei v. Rio Tinto, PLC, the Ninth Circuit considered whether federal courts should mandate exhaustion before plaintiffs could file suit generally in the United States under the Alien Tort Statute, which, as previously mentioned, does not explicitly provide an exhaustion provision in its statutory text. 456 F.3d 1069(9th Cir. 2006). The Ninth Circuit found that an exhaustion requirement should not be read into the ATS, reasoning that Congress would not have added a "superfluous exhaustion provision to the TVPA" if the Alien Tort Statute already contained one. Id.

When Congress enacted the ***Trafficking*** Victims Protection Act of 2000 (again referred to as the TVPA), pressures nearly identical to those which provided the catalyst for the enactment of the TVPA (torture) statute were at play, and Congress sought to expand the web of victims who merited redress in civil suits[4].

---

[4]Although trafficking is not a necessary component of torture, it has been universally acknowledged that torture is a central component of sex trafficking and/or slavery. As set forth in the legislative findings for the

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

Sex trafficking of women and children was at the forefront of international efforts to end this practice, and its eradication fell squarely within those acts now scorned by the evolving "law of nations". Indeed, Congress enacted the TVPA (trafficking) statute the very same year that the United Nations held their Convention Against Transnational Organized Crime, whose Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children provided the first legally binding instrument globally, with an agreed-upon definition of trafficking in persons.[5] Among other things, the Protocol sought efficient international cooperation in investigating and prosecuting these crimes. By enacting the TVPA (trafficking) statute, Congress, yet again, decided to expand upon the previously enacted TVPA (Torture) statute to include more victim-plaintiffs in response to the socio-political issues that had come to the forefront in the early 2000s, i.e. increased public awareness of the trafficking of women and children. Like the TVPA (torture) statute, had the tort of **trafficking** not been created by the enactment of the TVPA 2000, those victims' only

---

Trafficking Victims Protection Act (2000), "[t]he international community has repeatedly condemned slavery and servitude, violence against women, and other elements of trafficking, through declarations, treaties, and United Nations resolutions and reports, including … the Convention Against **Torture** and Other Cruel, Inhuman or Degrading Treatment or Punishment…" 22 U.S.C. § 7101(b)(23). (Emphasis added).

[5] 40 ILM 335 (2001); UN Doc. A/55/383 at 25 (2000); UN Doc. A/RES/55/25 at 4 (2001). The Convention was adopted by resolution A/RES/55/25 on November 15th, 2000 at the fifty-fifth session of the General Assembly of the United Nations.

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

alternative for redress would have been to rely upon the antiquated Alien Tort Statute[6]. The TVPA (trafficking) statute therefore also falls beneath the umbrella of the Alien Tort Statute, and extends the breadth of the TVPA (torture) statute,[7] because it too derives from Congress's intent to expand and clarify the Alien Tort Statute's criminalization of acts committed in violation of the laws of nations. Interestingly, courts have even interpreted the TVPA (trafficking) statute as limiting jurisdiction over trafficking claims to the confines of the Act, thereby precluding such claims under the ATS generally. Velez v. Sanchez, 754 F.Supp.2d 488 (E.D.N.Y. 2010) (also treating alien plaintiff's trafficking claim under the Alien Tort Statute as a claim under the TVPRA because underlying facts permitted inference of jurisdiction under TVPRA).

As detailed above, the TVPA (torture) and TVPA (trafficking) statutes were the result of domestic and international pressure on Congress to provide more specific civil redress for certain victims of heinous misconduct. And, although the TVPA (trafficking) does not contain an explicit exhaustion requirement in its text, because it is the logical

---

[6]Moreover, the "trafficking" plaintiff/victims would have encountered the same obstacles identified by Congress when the TVPA (torture) was enacted because of the repeated dismissals of claims under the ATS, due to the lack of clarity as to what actually constituted a "violation" of the "law of nations." See, e.g., Flartiga v. Pena-Irala, 630 F.2d 876 (2nd Cir. 1980)

[7]This statutory parallel is further evidenced by Congress' near identical wording of both statutes, and their identical acronyms.

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

extension of the TVPA (torture) statute, no exhaustion provision is necessary because that language already exists in its statutory predecessor, the TVPA (Torture). As such, to include it again would have been "superfluous".[8] <u>Sarei</u>, 456 F.2d at 1093.

Clearly the Trafficking component of the TVPA and the TVPRA is an extension of the "Torture" Act, as the victims of human trafficking are by the very nature of the practice subjected to torture on a regular basis. See, 22 U.S.C. § 7101(b)(6):

> Victims are often forced through physical violence to engage in sex acts or perform slavery-like labor. Such force includes rape and other forms of sexual abuse, ***torture***, starvation, imprisonment, threats, psychological abuse, and coercion.

(Emphasis added).

The additional causes of action created by the TVPA (trafficking) statute are critical to the expansion of the overall legislation, in that victims of human trafficking do not have causes of action for torture against individuals under the TVPA (torture) statute, as the Torture Act was not intended to cover "purely private" acts.[9] Consequently, those victims would have no choice but to bring their complaint under the TVPRA to

---

[8] It is important to recall that the <u>Sarei</u> court refused to read an exhaustion provision into the ATS, the TVPA (torture) statute's predecessor, for this very reason; had Congress intended for the ATS to have an exhaustion provision, it would not then have explicitly provided one in the language of the TVPA (torture) statute, which was an extension of the ATS, as the language would have been redundant.

[9]<u>See</u> H.R. Rep. No. 102-367 (I), at 5; S. Rep. No. 249, 102d Cong., 1st Sess., at 8 (1991). <u>See also Mohamad v. Palestinian Auth.</u>, 132 S. Ct. 1702, 1710 (2012)(the TVPA (torture) statute does not impose liability on perpetrators who act without authority or color of law of a foreign state).

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

seek redress for the torturous acts of human trafficking.

As such, the extension of the exhaustion requirement to the additional cause of action created by the legislative evolution of the Act to encompass claims for human trafficking, cannot be denied.

<u>Exhaustion of remedies is an international norm.</u>

Further, the exhaustion provision should also be read into the TVPA (trafficking) statute because litigating Plaintiffs' claims in the United States prior to bringing them in their home country of Brazil goes against standard international norms. <u>See, e.g.</u>, <u>Sarei</u>, 456 F.2d at 1107 (Bybee, J., dissenting) ("There is strong evidence that international law . . . recognizes exhaustion of remedies as a condition precedent to seeking relief before foreign and international tribunals" and "exhaustion is a well-established principle of international law, recognized by courts and scholars both here and abroad."). <u>See also Ackerman</u>, *supra* at 546. ("[t]he requirement in the TVPA [(torture)] and other similar statutes suggests that an exhaustion element should be required when torts committed in other countries are tried in U.S. courts. Congressional concerns such as intrusion on adequate foreign forums, unnecessary burdens on U.S. courts, and development of remedies in foreign nations are equally relevant . . . and support an exhaustion requirement.") <u>and</u> Regina Waugh, *Exhaustion of Remedies and the*

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

*Alien Tort Statute*, 28 Berkeley J. Int'l Law 555 (2000) ("There are numerous rationales for this requirement. They include the notion that the citizen going abroad is presumed to take into account the means furnished by local law for the redress of wrongs. The exhaustion requirement is also supported by the principle that national courts and administrative organs should be granted deference by foreign states. Finally, exhaustion allows the host State a sufficient opportunity to remedy the injury. The United States Congress has also noted that allowing a State to remedy a violation that took place within its borders encourages the development of meaningful remedies in other countries.) (internal citations omitted).

Because the exhaustion of adequate and available remedies is an international norm and Plaintiffs have not satisfied this requirement, their case must be dismissed.

> B. Brazil is the proper forum for the resolution of this dispute under the doctrine of *forum non conveniens.*

Plaintiffs' home country of Brazil is the appropriate forum for this lawsuit. District courts have the discretion to transfer any civil action to any other court where the action may have been brought, "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C.A. § 1404(a). Courts engage in a three-part inquiry to determine

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

whether a dismissal of the case in that jurisdiction is warranted: it must be established that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." Leon v. Millon Air, Inc., 251 F.3d 1305, 1309 (11th Cir. 2001).

An adequate forum in the country of Brazil exists in this case.[10] An alternative forum is inadequate "if the remedy provided by th[at] alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." Piper Aircraft Co. v. Reynolds, 454 U.S. 235, 254 (1981). There is ample case law finding Brazil to be adequate in this regard. See, e.g., Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1330-31 (11th Cir. 2011)("The record supports the determination of the district court that Brazil is also an adequate forum."); In re Air Crash Near Peixoto de Azeveda, Braz., 574 F.Supp.2d 272, 284-85 (E.D.N.Y.2008) ("The Court therefore finds that any delay in Brazil is sufficiently minimal, relative to the U.S., that Brazil should be considered an adequate forum. This

---

[10]The forum must also be "available", which means that the Defendant is subject to service of process in that jurisdiction. Even if Brazil does not have jurisdiction over Defendant, a party can always *consent* to being served. See, e.g., Tazoe, 631 F.3d at 1330 ("The manufacturers have stipulated that they will make themselves amenable to process in Brazil as a condition to dismissal.").

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

determination is consistent with several other courts that have found Brazil to be an available and adequate forum for a variety of claims."); Da Rocha v. Bell Helicopter Textron, Inc., 451 F.Supp.2d 1318, 1322 (S.D. Fla. 2006) ("Brazil provides Plaintiffs with an adequate alternative forum."). Furthermore, as stated above, Brazil offers Plaintiffs a cause of action for monetary damages upon the resolution of a criminal case, which Plaintiffs are seeking to bypass.

The second part of the *forum non conveniens* test is whether "the public and private factors weigh in favor of dismissal." Leon, 251 F.3d at 1311. This inquiry hinges on the "relative" advantages and disadvantages of each respective forum. When considering the private factors, the district court must consider "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). Clearly, all private factors point towards the convenience of bringing suit in Brazil. All of the victims and witnesses reside in Brazil; the alleged acts took place in Brazil; the sources of proof, should there be any, would be found in Brazil; and the company that Defendant

28

contracted out to provide transportation to and from the airport, provide the boat, accommodations, food and beverages, fishing poles, bait and supplies, hire workers and crew, obtain permits and guides to lead the expeditions where the alleged acts occurred is a Brazilian company that would not be subject to the jurisdiction of this Court, but would be attachable by the courts there.[11] The only individuals residing in the United States are Defendant and the tourists who visited Brazil, and the latter would be defense witnesses at trial. Further, the victims and witnesses to this case are Brazilian nationals who are known to speak limited English, and any testimony at trial or by deposition and/or any prior interviews or statements with these individuals would require the services of interpreters should the matter remain in the U.S. District Court.

The public factors that must be considered are "[t]he administrative difficulties flowing from court congestion; the

---

[11] If suit remains in the United States, Defendant would be forced to sue the company in a separate proceeding after this trial. The Tazoe court found this idea problematic:

First, a defense of this nature is surely less persuasive when aimed at a set of empty chairs because [i]f a . . . jury ultimately looked to place blame at the defense table, it would have available only one, rather than several, defendants to bear the brunt of its verdict and damage award.

Second, the Supreme Court has expressed similar concerns about judicial economy: "It is true, of course, that if [defendants] were found liable after a trial in the United States, they could institute an action for indemnity or contribution against these parties [abroad]. It would be far more convenient, however, to resolve all claims in one trial . . ."

Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1332 (11th Cir. 2011) (citing Piper Aircraft, 454 U.S. at 259).

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." <u>Piper Aircraft</u>, 454 U.S. 241 n.6 (quoting <u>Gilbert</u>, 330 U.S. at 509). Federal courts in the United States are backlogged and overburdened as it is, and should not bear the brunt of yet one more suit, when there is an adequate forum elsewhere, where the alleged activities occurred. Further, local interests in Brazil likely favor resolving the case in their home country, where the victims themselves reside, instead of in the United States, where the trier of fact is far removed from the allegations in this suit.

Finally, Plaintiffs can reinstate their suit in Brazil without undue inconvenience or prejudice. Plaintiffs would have the convenience of suing Defendant in their home country and in their native language. Further, presumably, the statute of limitations has not run in Brazil and nothing suggests that Plaintiffs would be prejudiced in bringing their suit there.

Accordingly, in the interest of justice, and for the reasons listed herein above, the Court should exercise its

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

discretion and dismiss Plaintiffs' suit on the grounds of *forum non conveniens*.

## CONCLUSION

**WHEREFORE**, for the reasons set out herein above, Defendant respectfully moves this Court dismiss Plaintiff's Complaint.


Respectfully submitted this 15th day of April, 2014.


<u>s/ L. David Wolfe</u>
L. David Wolfe, P.C
Georgia Bar No. 773325
Attorney for Defendant


<u>s/ L. Tamara Garcia</u>
L. David Wolfe, P.C.
Georgia Bar No. 698855
Attorney for Defendant

L. DAVID WOLFE, P.C. • 101 MARIETTA ST. N.W. SUITE 3325• ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|                              |   |                        |
|------------------------------|---|------------------------|
| PLAINTIFF A, PLAINTIFF B,    | \| |                       |
| PLAINTIFF C,                 | \| |                       |
| and PLAINTIFF D,             | \| |                       |
|                              | \| |                       |
|   Plaintiffs                 | \| |                       |
|                              | \| | CIVIL ACTION NO.      |
| v.                           | \| | 2:11-CV-00145-WCO     |
|                              | \| |                       |
| RICHARD WAYNE SCHAIR and     | \| |                       |
| WET-A-LINE TOURS, LLC,       | \| |                       |
|   Defendants.                | \| |                       |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of Defendant's **Motion to Dismiss** upon the following individual by electronic filing, which will automatically send email notification of such filing to the following:

**John W. Harbin**
King & Spalding, LLP
1180 Peachtree Street
Atlanta, Georgia 30309
404-572-4600
*jharbin@kslaw.com*

This the 15th day of April, 2014.

Respectfully Submitted,


s/ L. David Wolfe
L. David Wolfe, P.C.
Georgia Bar No. 773325
Attorney for Defendant
profldwolfe@aol.com

L. David Wolfe, P.C. • 101 Marietta St. N.W. Suite 3325• Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467