**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| PLAINTIFF A, PLAINTIFF B, PLAINTIFF C, and PLAINTIFF D, | : :  : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 2:11-CV-00145-WCO |
| RICHARD WAYNE SCHAIR and WET-A-LINE TOURS, LLC, | : : : | |
| Defendants. | : : | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff A, Plaintiff B, Plaintiff C, and Plaintiff D (collectively "Plaintiffs") respectfully submit this Opposition to the Motion to Dismiss ("Motion") filed by Defendant Richard Wayne Schair ("Schair," "Defendant," or collectively with co-defendant Wet-A-Line Tours, LLC, "Defendants").[1]

---

[1]   Plaintiffs note that Defendant Wet-A-Line Tours, LLC ("Wet-A-Line") did not file a motion to dismiss or join in the motion to dismiss filed by Schair. And Defendant Schair's motion does not comply with the page limitation set forth in Local Rule 7.1(D). Pursuant to Local Rule 7.1(F), the Court, in its discretion, may decline to consider Defendant's motion on this basis.

# I.   <u>INTRODUCTION</u>

Four young women from Amazonas, Brazil, assert claims against Defendants, American fishing tour operators, for damages under the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"), 18 U.S.C. § 1591, and the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.  Plaintiffs allege in their Complaint that Defendants induced or coerced them into performing sex acts with their customers when Plaintiffs were minors and that Defendants knowingly received financial benefits and other things of value as a result of this illicit conduct.  Plaintiffs' allegations against Defendants state a claim under the TVPA and the TVPRA.

Contrary to what Defendant contends, the TVPA and TVPRA do not require the exhaustion of foreign remedies precluding Plaintiffs' claims.  In addition, the 2008 versions of the TVPA and TVPRA should be applied retroactively to Defendant.  Defendant presents no argument under which this Court can conclude that Plaintiffs do not state a plausible claim upon which it may grant relief.  Furthermore, Plaintiffs have alleged and can prove facts in support of their claim that would entitle them to relief under the TVPA and TVPRA.   Therefore, Plaintiffs respectfully request that this Court deny Defendant's Motion.

## II.   <u>BACKGROUND</u>

### A.   FACTUAL ALLEGATIONS.

On June 14, 2011, Plaintiffs initiated this action seeking damages against Defendants for violations of the Victims of Trafficking and Violence Protection Act of 2000.  Docket No. ("Dkt.") 1.  As set forth in the Complaint, Plaintiffs are young Brazilian women, all of whom were victims of sex trafficking, in or affecting international commerce, as defined by the TVPA.  Dkt. 1 ¶ 1.

Defendant violated the TVPA by causing Plaintiffs to engage in commercial sex acts.  Dkt. 1 ¶ 1.  With co-defendant Wet-A-Line, Defendant recruited customers in the United States to engage in "sex tourism" in Brazil.  *Id.* ¶¶ 3, 26-36.  Defendants arranged transportation for their customers from the United States to Brazil and recruited girls, many of whom, like Plaintiffs, were under eighteen years of age, to engage in commercial sex acts aboard Defendants' fishing boat, the AMAZON SANTANA.  *Id.*  Defendant Schair, his employees, and/or his customers recruited the young girls at a "social club" near the Amazon river by, among other things, displaying wealth and providing the girls alcoholic drinks, thereby inducing the girls to ride on the AMAZON SANTANA.  *Id.* ¶¶ 4, 28-31.  Once the girls were on the boat, they were induced or coerced into performing sex acts with Schair and his customers.  *Id.* ¶¶ 4, 39, 43-47, 51-53, 56.  Defendants

were paid by the customers for their services, and sometimes the girls were paid modest amounts of money for engaging in these acts. *Id.* ¶¶ 4, 40, 44, 48, 53, 57. The girls, including Plaintiffs, were impoverished and the possibility of earning money on the boat was a significant inducement. *Id.* ¶¶ 5, 37. Moreover, Defendants committed these illegal acts against Plaintiffs even though all were under the age of eighteen at the time—one as young as twelve years old. *Id.* ¶ 6.

Plaintiffs allege that, through these actions, Defendant Schair violated section 1591 of the TVPA. Dkt. 1 ¶ 7. Not only did Schair participate in the obtainment, recruitment, and harboring of minors under the age of eighteen years to engage in commercial sex acts through use of fraudulent and coercive means; he also knowingly received financial benefits and other things of value as a result of the above-described actions of Wet-A-Line Tours and/or its employees. *Id.* Plaintiffs seek damages from Defendant under 18 U.S.C. § 1595 for causing them to engage in commercial sex acts (1) while under the age of eighteen, and (2) by means of force, fraud or coercion, in the State of Amazonas, Brazil, aboard the vessel AMAZON SANTANA, which has been owned and operated by Defendants. *Id.* ¶ 8.

## B.    PROCEDURAL BACKGROUND.

On July 7, 2011, Defendant Schair moved for a stay of this action under 15 U.S.C. § 1595(b)(1), arguing that a stay was required due to two ongoing criminal investigations—a federal criminal investigation in the Southern District of Florida (the "Federal Investigation") and a prosecution in the Brazilian criminal courts (the "Brazilian Prosecution").  Dkt. 6.  On August 17, 2011, the Court issued an order staying the case due to the Federal Investigation.  Dkt. 11.

On July 10, 2012, Plaintiffs moved to lift the stay, arguing that the federal government did not appear to intend to seek an indictment against either Defendant in connection with the Federal Investigation and that the Brazilian Prosecution was not relevant under the TVPRA.  Dkt. 15.  On November 28, 2012, the Court entered an order lifting the stay, finding that the Federal Investigation was no longer pending and that the Brazilian Prosecution did not warrant the continuance of the stay under the TVPRA.  Dkt. 31.  On December 21, 2012, Defendants appealed the November 28 decision.  Dkt. 32.

On March 10, 2014, the Eleventh Circuit Court of Appeals dismissed the appeal for want of jurisdiction.  Dkt. 52.  On March 26, 2014, the Court entered an oral order, among other things, directing defense counsel to file their motion to dismiss on or before April 15, 2014.

5

## III.   ARGUMENT

### A.   STANDARD OF REVIEW.

In reviewing the allegations of the complaint, "the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged [] in the complaint as true." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). While "unwarranted deductions of fact" are not admitted as true, the court should "make reasonable inferences in Plaintiff's favor." *Id.* A complaint should be dismissed only where it does "not state a claim for relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, "the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim, because factual allegations alone are what matters." *Consol. Edison Co. of N.Y. v. UGI Utils., Inc.*, 423 F.3d 90, 104 (2d Cir. 2003) (internal quotation marks omitted). Finally, "[j]udgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (internal quotation marks omitted).

**B.    PLAINTIFFS' ALLEGATIONS AGAINST SCHAIR STATE A CLAIM UNDER THE 2003 AND 2008 VERSIONS OF THE TVPA AND TVPRA**

Defendant Schair misconstrues the allegations in Plaintiff's Complaint and misapplies the retroactivity doctrine to the 2008 amendments to the TVPA to attempt to argue that Plaintiff's claims against him should be barred.  However, contrary to Defendant's argument, the 2008 amendments did not "vastly expand[]" Schair's liability under the TVPA and Plaintiff's claims against Schair do not depend upon any "newly criminalized activity" under the amended versions of 18 U.S.C. § 1591 and 18 U.S.C. § 1595.  *See* Mot. at 3 (Dkt. 58, Apr. 15, 2014). Because the application of the amended version of the TVPA would have no retroactive effect, the Court should apply the provisions of the TVPA as amended in 2008 to determine Schair's liability.  Moreover, even if the Court applies the version of the TVPA in effect as of 2003, Plaintiff's allegations are sufficient to state a claim against Schair.  Accordingly, Defendant's Motion should be denied.

1.    THE RELEVANT LEGISLATIVE HISTORY OF THE TVPA AND TVPRA.

18 U.S.C. § 1591 was first enacted in October, 2000 and defines the acts that constitute illegal sex trafficking of children.  As first enacted, 18 U.S.C. § 1591 provided in pertinent part:

(a) Whoever knowingly—

7

(1) in or affecting interstate commerce, recruits, entices, harbors, transports, provides, or obtains by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing that force, fraud, or coercion described in subsection (c)(2) will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

At the time, 18 U.S.C. § 1591(c)(1) defined a "commercial sex act" to mean "any sex act, on account of which anything of value is given to or received by any person." And 18 U.S.C. § 1591(c)(2) defined "coercion" to include, among other things, "threats of serious harm to or physical restraint against any person" and "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person." 18 U.S.C. § 1591(c)(2)(A) & (B). Finally, 18 U.S.C. § 1591(c)(3) defined a "venture" to mean "any group of two or more individuals associated in fact, whether or not a legal entity."

a.   THE 2003 AMENDMENTS.

In 2003, the TVPA was amended. The language of 18 U.S.C. § 1591 was revised to make clear that the conduct punishable under that provision included

acts "in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, … ."   In addition, in 2003, Congress added 18 U.S.C. § 1595, which created a civil remedy for victims of sex trafficking.  18 U.S.C. § 1595 provided in pertinent part:

> (a) An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

In other words, following the 2003 amendments, the TVPA permitted a victim of sex trafficking under 18 U.S.C. § 1591 to bring a civil action against the perpetrator of such violation.  Thus, civil liability under 18 U.S.C. § 1595 extended not only to those who knowingly recruited, harbored, transported, or provided victims of trafficking under 18 U.S.C. § 1591(a)(1), but also those who knowingly benefitted "financially or by receiving anything of value" from participation in such a venture under 18 U.S.C. § 1591(a)(2).

### b.    THE 2008 AMENDMENTS.

In 2008, the TVPA was amended again.  Among other things, 18 U.S.C. § 1591 was revised to make clear that conduct punishable under that section included actions taken "in reckless disregard of the fact, [sic] that means of force, threats of force, fraud, coercion described in subsection(e)(2), or any combination of such

means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, …".   Further, Congress clarified the provision by adding definitions for the terms "abuse or threatened abuse of law or legal process" and "serious harm".  15 U.S.C. § 1591(e)(1) & (2).

Moreover, as part of the 2008 amendments, the language of 18 U.S.C. § 1595(a) was revised to the following:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

In other words, following the 2008 amendments, 18 U.S.C. § 1595 no longer made explicit reference to violations of 18 U.S.C. § 1591 but made reference to it as "a violation of this chapter."  Section 1595 still extended civil liability to those who knowingly benefitted "financially or by receiving anything of value" from participation in a trafficking venture by making clear that a civil action could be pursued by a victim of *any* violation under the TVPA and TVPRA and against "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of

10

value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)."

    2.    <u>THE 2008 TVPA AND TVPRA SHOULD BE APPLIED RETROACTIVELY TO DEFENDANT SCHAIR.</u>

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court established principles to be used by courts in evaluating whether, as a matter of statutory analysis, an Act of Congress may be applied retroactively. *See id.* at 272; *Mohammed v. Ashcroft*, 261 F.3d 1244, 1249 (11th Cir. 2001). "*Landgraf* provides that the 'first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules.'" *Tefel v. Reno*, 180 F.3d 1286, 1302 (11th Cir. 1999), *cert. denied*, 530 U.S. 1228 (2000). In attempting to ascertain Congressional intent, "a court should use the 'normal rules of construction' and examine the text, structure, and history of the legislation to determine whether Congress intended for there to be retrospective application." *Mayers v. INS*, 175 F.3d 1289, 1302 (11th Cir. 1999) (quoting *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)). If, however, Congress has not prescribed the statute's reach, a court must move to step two and "determine whether the new statute would have [a] retroactive effect" if applied to the case at hand. If not, the presumption against retroactivity again has no application, but if it does, the presumption is triggered,

11

and the court must then inquire under the third step whether the presumption is overcome with "clear congressional intent" in favor of retroactivity. *Landgraf*, 511 U.S. at 280.

Here, Defendant cites no binding precedent from the Eleventh Circuit that prevents the application of the 2008 amendments to conduct that occurred prior to 2008. Instead, Defendant cites three cases from other circuits that address the retroactive application of 18 U.S.C. § 1595. However, these cases held only that 18 U.S.C. § 1595 did not apply retroactively to conduct that occurred before the statute became effective in December, 2003. *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012); *Ditullio v. Boehm*, 662 F.3d 1091, 1102 (9th Cir. 2011); *Doe v. Siddig*, 810 F. Supp. 2d 127, 136 (D.D.C. 2011). These cases are not applicable here since the conduct at issue in the Complaint occurred after 18 U.S.C. § 1595 first became effective in December, 2003.

Congress has not "expressly prescribed the statute's proper reach," and there is no "clear congressional intent" in favor or not in favor of retroactivity. *Landgraf*, 511 U.S. at 280. Applying the standard under *Landgraf*, therefore, the presumption against retroactivity is not triggered here, because, if applied to this case, the 2008 amendments do not have a "retroactive effect" (*i.e.*, do not expand

Schair's liability) and, therefore, should be applied to the conduct alleged in the Complaint.

Plaintiffs allege that Defendant Schair violated section 1591 of the TVPA by not only participating in the obtainment, recruitment, and harboring of minors under the age of eighteen years to engage in commercial sex acts through use of fraudulent and coercive means, but also by knowingly receiving financial benefits and other things of value as a result of the above-described actions of Wet-A-Line Tours and/or its employees.  Dkt. 1 ¶ 7.  The statutory scheme in place in 2003 provided for civil liability for violations of 18 U.S.C. § 1591, which included persons who knowingly "benefit[], financially or by receiving anything of value, from participation in a venture …".  Contrary to Defendant's argument that the 2008 amendment to § 1595 of the TVPA "expanded liability" for a violation of 18 U.S.C. § 1591, *see* Mot. at 16, the amendment instead deleted the phrase "of section 1589, 1590, or 1591" after the words "victim of violation."  TVPRA, Pub. L. No. 110-457, § 221, 122 Stat. 5044, 5067.  By doing so, Congress in effect expanded the private right of action to *any* violation under Chapter 77 of Title 18, including violations of Sections 1584 and 1590.

Second, the 2008 amendment to 18 U.S.C. § 1595 loosened the mens rea standard for whoever violates the Chapter 77 crimes.  Not only would a criminal

actor be in violation of the statute acting "knowingly" but also if he "knew or should have known." *Compare* 18 U.S.C. § 1591(a) (2001) ("Whoever knowingly … benefits") to 18 U.S.C. § 1595 (2008) ("Whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known …"). Congress intended for the new language to enhance the standard already listed in 18 U.S.C. § 1591, thus extending the civil remedy to include a negligent mental state. The 2008 amendment's addition of the "knew or should have known" standard does not expand Schair's liability for the purpose of the *Landgraf* analysis because, as Plaintiffs alleged in their Complaint, Schair knowingly benefitted financially at the time the illicit acts occurred.

Because the 2008 amendments did not expand Schair's liability, they should be applied to the conduct alleged in the Complaint.

3. <u>EVEN APPLYING THE 2003 VERSION OF THE TVPA, THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT ARE SUFFICIENT TO WITHSTAND DISMISSAL</u>

Even assuming all of the events alleged in the Complaint took place before the 2008 amendments became effective and the 2008 amendments cannot be applied retroactively, as set forth above, both 18 U.S.C. § 1591 and § 1595 were in effect as of 2003. At that time § 1595 provided a civil remedy against

"perpetrators" for violations of, among other things, 18 U.S.C. § 1591. Moreover, the version of 18 U.S.C. § 1591 in effect at the time defined punishable activity to include persons who knowingly "benefit[], financially or by receiving anything of value, from participation in a venture …". This is essentially the same language that was later added into 18 U.S.C. § 1595 and that Defendant argues cannot be applied to him. However, the statutory scheme in existence at the time provided for a civil remedy against Defendant.

When initially enacted, Section 1595—the civil remedy—applied only to an individual who was "a victim of … section 1589, 1590, or 1591 of this chapter." *See* 18 U.S.C. § 1595 (2006). Thus, Section 1595 served as the civil remedy for damages based on the crimes listed under Sections 1589, 1590, or 1591, and each crime's statutory differences placed limits on the application of 18 U.S.C. § 1595. *See, e.g.*, *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1002-03 (S.D. Ind. 2007) (comparing the language of 18 U.S.C. § 1589 to the language of 18 U.S.C. § 1591, and holding that, whereas section 1591 included language indicating Congressional intent for extraterritorial effect, "in or affecting interstate or foreign commerce," the language of section 1589 expressed no such intent and therefore American affiliates who had benefitted financially from exploitative labor conditions in Liberia could not be held liable under 18 U.S.C. § 1595.)

The 2008 Amendments deleted the phrase "of section 1589, 1590, or 1591" after the words "victim of violation." Pub. L. No. 110-457, § 221, 122 Stat. 5044, 5067.  By doing so, Congress in effect expanded the private right of action to any violation under Chapter 77 of Title 18, including violations of 18 U.S.C. § 1584 and 18 U.S.C. § 1590.  Congress also expanded the definition of who is subject to civil liability for all violations by amending the language of 18 U.S.C. § 1595 to include perpetrators or those persons who benefit financially from the crime, consistent with the definition of a perpetrator under 18 U.S.C. § 1591. The 2008 amendment was not specific to Section 1591 nor did it alter the definition of a perpetrator under Section 1591.

While the Ninth Circuit in *Ditullio v. Boehm*[2] correctly stated that "[t]he version of [18 U.S.C. §] 1595 enacted in 2003 … did not *expressly* permit recovery against individuals who benefit from participation in a trafficking venture. …," 662 F.3d at 1094 n.1 (emphasis added), the 2003 version of 18 U.S.C. § 1595 did in fact permit recovery against individuals who benefit financially from participation in a violation of 18 U.S.C. § 1591.  Since 2001, 18 U.S.C. § 1591 has provided for the criminal prosecution of whoever knowingly "(1) … recruit[s],  entic[es],  [or]

---

[2]   In *Ditullio*, the Ninth Circuit declined to apply the 2003 version of 18 U.S.C. § 1595 to conduct prior to the remedy's effective date on December 19, 2003.

harbor[s], … or (2) benefit[s] financially or … receiv[es] anything of value, from participation in" trafficking persons for sex. 18 U.S.C. § 1591 (2001). Recovery is not prevented simply because there is no express provision in 18 U.S.C. § 1595 regarding a trafficking venture. Such a reading of the statute ignores and misconstrues how Congress intended the civil remedy provided for in 18 U.S.C. § 1595 to interact with the criminal violations of United States laws identified within Chapter 77.

### C.   THE TVPA AND TVPRA DO NOT REQUIRE AN EXHAUSTION OF FOREIGN REMEDIES AND THEREFORE DEFENDANT'S EXHAUSTION ARGUMENT IS FUTILE.

The text of the TVPA or the TVPRA does not explicitly require a victim of human trafficking to seek a foreign remedy prior to seeking a Section 1595 remedy. *See* 18 U.S.C. §§ 1590 *et seq*. Defendant brazenly urges this Court to exercise legislative power belonging only to Congress by "reading into" the TVPA an exhaustion of remedies provision akin to the provision clearly stated in the Torture Victim Protection Act. *See* Mot. at 25; 28 U.S.C. §§ 1350 *et seq*. However, this Court need look no further than the plain language of the TVPA. Unlike the Torture Victim Protection Act, which includes a subsection specifically titled "Exhaustion of Remedies," the TVPA does not prohibit this Court from hearing a claim if the "claimant has not exhausted adequate and available remedies

in the place in which the conduct giving rise to the claim occurred."  28 U.S.C.
§ 1350 note § 2(b).  As a result, no victims of human trafficking—let alone
Plaintiffs—are on notice of a duty to first seek a foreign remedy.  Therefore, this
Court must reject Defendant's argument and deny the Motion to Dismiss.

       1.       THE TVPA INCLUDES NO EXHAUSTION REQUIREMENT PRECLUDING PLAINTIFFS' CLAIM

No exhaustion requirement exists in the Act.  "When the import of the words
Congress has used [in a statute] is clear, [this Court] need not resort to legislative
history, and [this Court] certainly should not do so to undermine the plain meaning
of the statutory language."  *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000).
Defendant's argument that this Court must "read into" the TVPA a requirement
that Plaintiffs first exhaust potential remedies in Brazil before seeking redress
under the TVPA and TVPRA contradicts the most basic principles of statutory
interpretation.  While a doctrine of exhaustion might exist in the case of Alien Tort
Statute litigation,  there simply is no doctrine of exhaustion in the TVPA or in the
TVPRA.

When the import of the words Congress has used is clear, as it is here, this
Court need not resort to legislative history, and certainly should not do so to
undermine the plain meaning of the statutory language.  *See United States v.*
*Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command,

there is no reason to resort to legislative history."); *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) ("There are, we recognize, contrary indications in the statute's legislative history.  But we do not resort to legislative history to cloud a statutory text that is clear."); *Barnhill v. Johnson*, 503 U.S. 393, 401 (1992) ("To begin, we note that appeals to statutory history are well taken only to resolve statutory ambiguity." (internal quotation marks omitted)); *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said.").

Moreover, courts have expressly held that perpetrators of human trafficking do not have the right to traffic human beings at home or abroad.  Congress passed the TVPRA plainly in order to create an express public duty to refrain from acts of trafficking.  *See John Roe I*, 492 F. Supp. 2d at 1002-03  (recognizing that 18 U.S.C. § 1591 includes the explicit language indicating Congressional intent for extraterritorial effect: "in or affecting interstate or foreign commerce.").  Moreover, 18 U.S.C. § 1596, which explicitly recognizes this Court's jurisdiction over extraterritorial TVPRA claims, enlarges the jurisdiction of courts within the United States, but does not change the operative substantive laws.  *See* 18 U.S.C. §

1596. Thus, Defendant's concerns surrounding the application of this statute prior to the exhaustion of any potential foreign remedy simply do not apply. *See Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 683 (S.D. Tex. 2009) (holding that the purported victims from Nepal and laboring in Jordan had alleged and provided factual support for the allegation that the defendants had participated in and knowingly benefited from a venture that involved forced labor under 18 U.S.C. § 1595).

As observed by the *Adhikari* court, the "thrust" of the TVPA and the TVPRA would be "severely undermined" by a reading of the Act by this Court that "U.S. defendants who gained commercial advantage in this country through engaging in illegal human trafficking were free from liability so long as the trafficking acts themselves took place outside of American borders." *Id.* The *Adhikari* court rejected the contention that Congress manifested an intent not to authorize extraterritorial civil claims when it failed to include a reference to 18 U.S.C. § 1595, which allows for civil remedies, in the provision. *Id.* at 683-84. Any contrary decision would be both illogical and in contravention of the purpose of the statute, especially where the purpose of the Act is to deter a crime acknowledged by Congress to have an international impact affecting both interstate and foreign commerce and which foreign laws do not address sufficiently. *See*

H.R. Conf. Rep. No. 106-939, at 3-5 (2000)(stating that the purpose of the Act is to "combat trafficking in persons" which Congress finds "substantially affects interstate and foreign commerce" and involves persons trafficking into "the international sex trade" and "[e]xisting legislation and law enforcement in the United States and other countries are inadequate").

2.   THE TVPA DOES NOT REQUIRE THAT FEDERAL COURTS BE BEHOLDEN TO THE UNCERTAINTIES OF FOREIGN TRIBUNALS

The TVPRA does *not* require that federal courts be beholden to the uncertainties of foreign tribunals.  In fact, Congress specifically recognized, in passing the TVPA and the TVPRA, that in many countries, the laws for prosecuting the traffickers and protecting the victims are weak and need to be strengthened.  Information compiled by the U.S. Department of State shows that foreign tribunals do not meet the same standards for legislating and enforcing trafficking violations as the United States.  Thus, while the TVPRA aims to improve the foreign prosecution of trafficking, it does *not* do so to the detriment of remedial authority of the federal courts.[3]

---

[3]  Regarding Brazil specifically, the State Department's Trafficking in Persons Report, states that, while the Government of Brazil is making significant efforts, it does not yet "fully comply with the minimum standards for the elimination of trafficking…" 2012 Trafficking in Persons Report Country

21

At the risk of stating the obvious, purported criminal proceedings in many foreign jurisdictions often are shams or are used as political tools.  *See* World Digest, *Sudan's army aided fugitive warlord Joseph Kony, group says; U.S. jihadi in Somalia tweets of bid to kill him*, WashingtonPost.com (Apr. 26, 2013), *available at* 2013 WLNR 10311647 (reporting on Russian court's rejection of plea for early release by jailed member of feminist punk band who was given a two-year sentence "after the band staged an irreverent protest against President Vladimir Putin in Moscow's main cathedral.").  It would turn the protection of the TVPRA on its head if the civil remedies afforded to victims of trafficking abroad could be available to victims who are not U.S. citizens or who were not victimized on United States soil, even if the crime were committed by a U.S. citizen.

---

Narratives at 95, *available at* http://www.state.gov/documents/organization/192594.pdf.

The Report notes at least the following deficiencies with Brazil's legislation and enforcement of human trafficking laws: (1) "Despite continued prevention efforts on child sex tourism and investigations of commercial sexual exploitation of children, there were no reported prosecutions or convictions of child sex tourists" in the past year; (2) In the context of slave labor convictions, "federal judges commuted sentences of less than four years' imprisonment to community service, thus undercutting in practice the otherwise stringent penalties set forth in the relevant anti-trafficking statutes."; (3) "Brazilian law does not appear to adequately criminalize non-physical coercion or fraud used to subject workers to forced labor, such as threatening foreign victims with deportation unless they continue to work."; (4) "[U]nder current statutes many convicted traffickers can serve their sentences under house arrest." *Id.*

Certainly if Congress had intended for foreign criminal statutes only to apply trafficking violations committed by U.S. citizens abroad, it would have provided an explicit foreign exhaustion requirement within the statute itself.

Given the deficiencies of and lack of predictability in many foreign criminal proceedings, imposing a foreign exhaustion requirement in a civil action brought under 18 U.S.C. § 1595 would work to prejudice the victims of trafficking—those whom the statute is designed to protect.

   3.   DEFENDANT'S EXHAUSTION ARGUMENT FAILS BECAUSE NO LOGICAL RELATIONSHIP EXISTS BETWEEN THE TORTURE VICTIM PROTECTION ACT AND THE TRAFFICKING VICTIMS PROTECTION ACT

Defendants mistakenly argue that a relationship exists between the Torture Victim Protection Act of 1991 and the Trafficking Victim Protection Act. The Torture Victims Protection Act permits a federal cause of action against anyone who, under authority or color of law of any foreign nation, "subjects an individual to extrajudicial killing." 28 U.S.C. § 1350 note § 2(a)(2). The Torture Victim Protection Act also contains an explicit provision entitled "Exhaustion of Remedies," which states that a "court shall decline to hear a claim under this section [establishing a cause of action] if [it appears that] the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." *Id.* § 2(b). Defendant argues that the claim

against him cannot be heard because the Exhaustion of Remedies provision under the Torture Victims Protection Act interacts with the Trafficking Victims Protection Act.  Defendant cites no caselaw in support of this proposition and for good reason—none exists and the argument is baseless.  While the Acts share a similar purpose in that Congress intended to address specific human rights violations within their pages, the Acts' provisions do not overlap.  Section 1595 includes no exhaustion of remedies provision.  *See* 18 U.S.C. § 1595(b)-(c) (permitting a stay of the civil action during the pendency of any criminal action and imposing a ten year statute of limitations).  Thus, no evidence exists within the text of the TVPA to support Defendant's argument.

Courts have imported certain provisions from the Torture Victims Protection Act into the Alien Tort Statute.[4]  *See* Ekaterina Apostolova, *The Relationship*

---

[4]  Like the *Torture* Victim Protection Act, the Alien Tort Act concerns *international law* violations and not violations of U.S. criminal law found under 18 U.S.C. §§ 1581-94, prosecuted by the U.S. Department of Justice, and the basis for the § 1595 civil remedy.  *Cf. Sosa v. Alvarez-Machain*, 542 U.S 695, 724, 725(2004) (explaining that the ATA is jurisdictional in nature but that it also provides a cause of action "for the modest number of international law violations with a potential for personal liability at the time [of its enactment]" and that causes of action under the ATA are not static; new ones may be recognized, if the claim is "based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized.").

*Between the Alien Tort Statute and the Torture Victim Protection Act*, 28 Berkeley

J. Int'l Law 640 (2010).  But in those cases, the interpretation has not concerned

the exhaustion of foreign remedies.  *See id.* at 643.  Rather, courts have argued that

the Torture Victim Protection Act replaces torture and extrajudicial killing claims

under the Alien Tort Statute.  *Id.*  Some courts also hold that the Torture Victim

Protection Act and the Alien Tort Statute offer distinct claims for torture and

extrajudicial killing, with the Torture Victim Protection Act informing the Alien

Tort Statute in certain ways.  *Id.*  Therefore, Defendant has no legal or rational

basis to argue that the exhaustion provision within the Torture Victim Protection

Act should extend to the Trafficking Victim Protection Act.  Defendant's Motion

to Dismiss must be denied.

Because Defendant presents no argument under which this Court can

logically conclude that Plaintiffs must first exhaust any foreign remedy in Brazil,

this Court must deny Defendant's Motion to Dismiss.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny

Defendant's Motion.

Respectfully submitted, this 2nd day of May, 2014.

KING AND SPALDING LLP

/s/ John W. Harbin
John W. Harbin
Georgia Bar No. 324130
jharbin@kslaw.com
1180 Peachtree Street, NE
Atlanta, Georgia 30309
(404) 572-4600 (telephone)
(404) 572-5100 (facsimile)

Attorneys for Plaintiffs

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D) of the Northern District of Georgia, I hereby certify that this pleading has been prepared in compliance with Local Rule 5.1(C).

*/s/ John W. Harbin*
John W. Harbin

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2014, I electronically filed the foregoing

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

with the Clerk of Court using the CM/ECF system which will automatically send

e-mail notification of such filing to the following attorneys of record:

Larry David Wolfe
Georgia Bar. No. 773325
david@ldavidwolfe.com
L. David Wolfe, P.C.
Attorneys and Counselors at Law
Suite 3325, Centennial Tower
101 Marietta Street, N.W.
Atlanta, GA 30303
(404) 352-5000 (telephone)
(404) 524-2467 (facsimile)

*s/ John W. Harbin*
John W. Harbin