IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| **PLAINTIFF A, PLAINTIFF B, PLAINTIFF C, and PLAINTIFF D,** | |
| **Plaintiffs** | |
| v. | CIVIL ACTION NO. 2:11-CV-00145-WCO |
| **RICHARD WAYNE SCHAIR and WET-A-LINE TOURS, LLC,** | |
| **Defendants.** | |

### DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS

**COME NOW**, **Defendants** Richard Wayne Schair and Wet-A-Line Tours, LLC, hereinafter "Defendants", by and through undersigned counsel, and file this, their Reply To Plaintiffs' Opposition To Defendants' Motions To Dismiss. In support of said Reply, Defendants show this Honorable Court the following:

### Introduction

On April 15, 2014, Defendants[1] moved this Court to dismiss the Complaint against them on the grounds that Plaintiffs' claims are barred by the doctrine of retroactivity; Plaintiffs have failed to exhaust adequate and available remedies in

---

[1] Defendant filed his Motion to Dismiss and this Reply individually and in his capacity as sole owner of Co-Defendant Wet-A-Line, LLC. As such, if the Court determines that the Motion to Dismiss is granted as to Schair individually, the complaint would be dismissed in its entirety against both Defendants.

L. David Wolfe, P.C. • 101 Marietta Street, N.W. • Suite 3325 • Atlanta, GA 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

Brazil; and based upon the doctrine of forum non conveniens.[2] On May 2, 2014, Plaintiffs filed their Opposition to Defendants' Motion to Dismiss. Defendants submit that the arguments in Plaintiffs' Response are misplaced for the reasons set out herein below.

## Argument And Citation Of Authority

### I. The 2008 TVPRA cannot be applied retroactively.

In their Opposition, Plaintiffs erroneously claim that the Trafficking and Violence Protection Reauthorization Act of 2008 ("TVPRA") should be applied retroactively to the alleged events in the present case, which occurred in 2005 – 2006, because the 2008 amendments do not expand Defendants' liability. (Doc.59, P. 12-13). Defendants submit that Plaintiffs' argument is incorrect.

---

[2] Plaintiffs also claim that Defendants' 31-page Motion to Dismiss (Doc.58) exceeds the 25-page limitation set forth in Local Rule 7.1(D). Defendants submit that Doc.58 was filed as a consolidation of two motions to dismiss on two different grounds. Therefore, although the 25 page limitation was exceeded by 6 pages, had the Motions been filed separately the limit for such filings would have been 50 pages.

Prior to the filing of Doc.58, on March 14, 2014, the parties filed a Joint Preliminary Report and Discovery Plan (Doc.55). In the attachment Defendants clearly listed two different grounds for dismissal: retroactivity and exhaustion. Defendants communicated at the pre-trial conference their intent to consolidate the two motions identified in their portion of the Joint Preliminary Report in one filing. The undersigned has consulted with Plaintiffs' counsel since the filing of their response and prior to the filing of the instant Reply and Plaintiffs have no objection to the Court expanding the 25 page limit set out in Rule 7.1(D), in that Defendants addressed both motions in a single pleading.

At the outset, it is clear that Plaintiffs err in their assertion that the precedent cited in Defendants' Motion "are not applicable here" on the ground that said cases only bar the retroactive application of the 2003 TVPRA, and not the 2008 amendments.  In making this contention, Plaintiffs completely ignore the detailed discussion in Defendants' Motion of the holding in Elat v. Ngoubene, 2014 WL 253411 (D. Md. 2014).In Elat, the court concluded that "the presumption against retroactivity is triggered because, if applied to this case, the ***2008 amendments*** would have a retroactive effect, as the alleged events concluded before the amendments went into effect." Id.  (Emphasis added).  (Doc.58, P.13-14).

To ascertain whether the presumption against retroactivity bars the application of a statute, a two-step analysis is undertaken to: 1) determine whether Congress expressly prescribed the statute's proper reach; and 2) determine whether the statute, if not so prescribed, nonetheless has a retroactive effect. Landgraf v. USI Film Prods., 511 U.S. 244, 265, 269–70 (1994).

Applying the Landgraf test, Plaintiffs correctly acknowledge that "Congress has not expressly prescribed the statute's proper reach" when it comes to the 2008 amendments to the TVPRA. (Doc.59, P.12).  See also Elat, *supra* (finding that Congress did not expressly prescribe the 2008 TVPRA's proper reach and there is no clear congressional intent in favor of retroactivity). Absent Congress' express prescription of the statute's proper reach, ***the presumption against retroactivity is***

*triggered*. Landgraf, *supra*. Therefore, Plaintiffs' contention that "the presumption against retroactivity is not triggered here" misstates the Landgraf standard and is plainly contrary to established statutory law. (Doc.59, P.12). Indeed, federal courts "employ a robust presumption against statutory retroactivity[.]" Ward v. Dixie Nat. Life Ins. Co., 595 F.3d 164, 172 (4th Cir.2010). As The Supreme Court has clearly noted, "[i]n the civil context, prospectivity remains the appropriate default rule unless Congress has made clear its intent to disrupt settled expectations." Landgraf at 265.

The inquiry then becomes whether the statute would have a retroactive effect, i.e., "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."Id. at 280. If there is no clear Congressional language or intent, yet the statue has a "disfavored" retroactive effect, the statute may not operate retroactively. Id.

As Defendants point out in their Motion, the 2008 amendments to the TVPRA *vastly* expands the crime of sex trafficking and a defendant's civil liability in *more than one* way, from what it had been prior to those amendments:

- §1595(a) expanded liability from individuals solely deemed a perpetrator of §§ 1589-1591 to individuals deemed either a perpetrator of the entire chapter or individuals who knowingly benefited financially;

- (2) §§1591(a) and 1591(c) expanded the crime of sex trafficking by removing the knowledge-of-age requirement for instances involving minors;
- (3) §1591(a)(2) lowered the standard of proof from having to "know" to merely requiring a "reckless disregard" for determining the use of force, fraud, or coercion to cause a person to engage in commercial sex; and,
- (4)§1591(e)(2) expands the definition of "coercion" by including "financial harm" within the definition of "serious harm." (Doc.58, P.16-17).

Thus, Plaintiffs' claim that "the 2008 amendments do not have a 'retroactive effect' (i.e., do not expand Schair's liability)" and therefore "the presumption against retroactivity is not triggered here" is simply wrong. Not only did the 2008 amendments expand Defendants' liability as outlined above, but Plaintiffs' claims depend in their entirety upon this newly criminalized activity.

Curiously, in their response, Plaintiffs first effectively conceded that the 2008 amendment has a "retroactive effect". Consequently, as noted in Landgraf, a statute found to have a "retroactive effect" ***cannot*** be applied retroactively, as it impermissibly amplifies a Defendant's liability for conduct that was not illegal at the time it occurred. Landgraf, *supra*. In this regard, Plaintiffs noted that the new language added a "reckless disregard" mens rea to the statute. (Doc. 59, P. 9). Yet, they nonetheless come to the illogical conclusion that the 2008 amendments ***are*** applicable to Defendants' alleged conduct. Specifically, Plaintiffs agree with Defendants' contention that "the 2008 amendments to 18 U.S.C. §1595 ***loosened***

*the mens rea standard* for whoever violates the Chapter 77 crimes." Id. (Emphasis added). Comparing 18 U.S.C. §1591(a)(2001) to 18 U.S.C. §1595(2008), Plaintiffs wrote that "Congress intended for the new language to enhance the standard … thus *extending* the civil remedy to include a negligent mental state." (Doc.59, P.13)(Emphasis added). Further, Plaintiffs noted that the 2003 version of 18 U.S.C. §1595 only provided for a private right of civil action for victims of "of a violation of section 1589, 1590, or 1591". Plaintiffs stated that through the 2008 amendments "Congress in effect *expanded* the private right of action to *any* violation under Chapter 77 of Title 18." (Doc.59, P.13) (Emphasis original and added). Since Plaintiffs' own analysis clearly demonstrates that the 2008 amendments have a "retroactive effect", the necessary conclusion would have to be that the 2008 amendments should *not* be retroactively applied to Defendants' pre-2008 conduct.

Plaintiffs make only one substantive argument for retroactivity, contending that "the 2008 amendment's addition of the 'knew or should have known' standard does not expand Schair's liability," because Plaintiffs alleged in their Complaint that Schair "knowingly benefitted financially" at the time the alleged acts occurred. (Doc.59, P.14). However, as Defendants pointed out in their Motion and herein above, despite the fact that the 2008 amendments to the TVPRA increased Defendants' criminal and civil liability in *multiple* ways, Plaintiffs make but one

substantive argument merely contesting the effect of the loosened *mens rea* requirement. As to the other three expansions of liability, Plaintiffs are silent.

Because the 2008 amendments so greatly expand both the civil and criminal aspects of liability under the Act, there can be no doubt that the "robust presumption against statutory retroactivity" is triggered in the present case. <u>Ward</u>, *supra*. Plaintiffs offer no evidence indicating that legislative intent favors retroactive application of the 2008 amendments for the alleged acts which occurred in 2005 or 2006. In fact, Plaintiffs clearly concede that "there is no 'clear congressional intent' in favor of or not in favor of retroactivity." (Doc.59, P.12).

As such, under the <u>Landgraf</u> analysis, Plaintiffs' claims are strictly barred by the doctrine of retroactivity, and the Complaint should be dismissed as a matter of law.

## II. <u>Dismissal of The Complaint Is Warranted As It Lacks Sufficient Factual Matter To State A Facially Plausible Claim Under The 2003 Version of The TVPRA.</u>

First of all, Plaintiffs effectively conceded that they cited the ***wrong*** statute (the 2008 amendments to the TVPRA) in their complaint by arguing that "the failure in a complaint … to cite the correct [statute]" does not affect the merits of a claim. (Doc.59, P.6). Even if Plaintiffs are correct on this point, they nonetheless never sought to amend the Complaint. In these situations, where citing the wrong statute in a complaint prejudices the other party in preparing its defense, courts

usually do dismiss the complaint. See e.g., Helm v. Resolution Trust Corp., 84 F.3d 874, 880 (7th Cir. 1995) (affirming dismissal of the plaintiff's complaint where the complaint cited incorrect statute as basis for claim); Watson v. Cleveland Municipal Sch. Dist., 2005 WL 1239280 (N.D.Ohio) (granting motion to dismiss on grounds Plaintiff filed her complaint under the wrong statute); Wineland v. Casey's General Stores, Inc., 554 F.Supp.2d 915 (S.D. Iowa 2008) (employees' complaint failed to state claim for wages under Missouri law, where complaint cited incorrect statute).

In their Opposition, Plaintiffs argue that the allegations in the Complaint are sufficient to withstand dismissal under the 2003 version of the TVPRA, simply because §1595 (2003) provides a civil remedy against perpetrators for violations of §1591(2003), which defines punishable activity to include persons who "knowingly benefit[], financially or by receiving anything of value …" (Doc.59, P.14-15). Defendants submit that Plaintiffs' argument is without merit in that Plaintiffs' Complaint *fails to state a claim under the 2003 version of the TVPRA*.

To preclude dismissal, a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir.2010).In the case at bar, the relevant parts of the 2003 version of §1591 provide that:

(a) Whoever knowingly--

(1) in or affecting interstate commerce, recruits, entices, harbors, transports, provides, or obtains by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

*knowing that force, fraud, or coercion described in subsection (c)(2) will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act*, shall be punished as provided in subsection (b).

…

(c) In this section:

…

(2) The term "coercion" means--

(A) threats of serious harm to or physical restraint against any person;

(B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

(C) the abuse or threatened abuse of law or the legal process.

…

18 U.S.C. §1591 (2003) (emphasis added).

Thus, to constitute a violation of 18 U.S.C. §1591 (2003), a defendant, who either directly participated in the alleged acts of sex trafficking or financially benefitted from participation in a venture which has engaged in such acts, must also *know* that force, fraud, or coercion was used; or *know* that the person has not attained the age of 18 years. Plaintiffs' Complaint lacks sufficient factual

allegations regarding these essential elements of §1591 (2003) to state a facially plausible claim.

Further, it is critical to note that the 2003 definition of "coercion" under §1591did not include psychological or financial harm. It was not until in 2008 that "psychological, financial, or reputational harm" was added to the scope of "serious harm" in the context of "coercion." With this in mind, Plaintiffs' Complaint merely alleges that Plaintiffs were "induced" or "lured" by displaying wealth and providing alcoholic beverages (Doc.1, ¶¶4, 30, 38); that "Plaintiffs were impoverished and the possibility of earning money on the boat was a significant inducement"(Doc.1, ¶¶5, 37); and that Defendants' agents recruited Plaintiffs under "false pretense" (Doc.1, ¶63). These allegations, separately and collectively, fail meet the requirements of "coercion" as set forth in the 2003 version of 18 U.S.C. 1591(e)(2)(A-C), which demands a demonstration of "serious harm to … or physical restraint against any person" or "abuse or threatened abuse of law or the legal process."

It is equally worth noting that nowhere in the Complaint did Plaintiffs allege that Defendants *knew* that force, fraud, or coercion would be used to cause Plaintiffs to engage in a commercial sex act, although the Complaint alleged (again, without offering any specific facts) that Plaintiffs were "forced" to have sex with the passengers. In fact, the Complaint merely alleged that "Defendant Schair was

present on the boat." (Doc.1, ¶ 43).  Therefore, Plaintiffs have not stated a claim in that the Complaint fails to contain sufficient factual matters with regard to Defendants' knowledge of the use of force, fraud, or coercion.

Moreover, the Complaint also fails to allege that Defendants *knew* that Plaintiffs were under the age of 18 at the time of those alleged events.  The Complaint merely states the age of the four Plaintiffs respectively, without alleging any specific facts indicating that Defendants actually knew how old these Plaintiffs were. (Doc.1, ¶¶ 38, 42, 50, 55).

Consequently, dismissal of the Complaint is warranted because it fails to state a facially plausible claim.

### III. Plaintiffs misconstrue Defendants' exhaustion argument.

In their Opposition, Plaintiffs argue that this Court needs "look no further than the plain language of the TVPA" to determine whether it requires Plaintiffs to first exhaust available local remedies in Brazil before they bring a lawsuit in the United States, as the statutory language of the TVPA is unambiguous in that it contains no such requirement. (Doc.59, P.17-19).

Defendants submit that, contrary to Plaintiffs' contention, the TVPA (trafficking) statute's silence regarding exhaustion makes the statute facially ambiguous.  First, the TVPA (trafficking) statute contains *no* language preventing the application of an exhaustion requirement. Second, the Alien Tort Statute,

which is now codified in 28 U.S.C. § 1350 (2000), gives district courts original jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." Id.  As Defendants discuss at length in their Motion to Dismiss, both the TVPA (trafficking) statute and the TVPA (torture) statute fall beneath the umbrella of the Alien Tort Statute, as both statutes derive from Congress's intent to expand and clarify the Alien Tort Statute's criminalization of acts committed in violation of the laws of nations. It is particularly critical to note that "[t]he TVPA was codified in the historical notes section of the ATS and was not set apart as a separate statute." [3]Thus, when Congress enacted the TVPA (torture) statute, they intended for it to function as an extension of the ATS.  This explains why the Alien Tort Statute does not *explicitly* provide an exhaustion provision in its statutory text – because the TVPA (torture) statute already contains one.  As such, Plaintiffs are wrong in contending that there is no logical relationship between the TVPA (Trafficking) statute and the TVPA (Torture) statute.

Since the TVPA (trafficking) statute is silent on the exhaustion requirement provided by its statutory predecessor, at the very least there is ambiguity as to whether the exhaustion requirement contained in the TVPA (torture) applies to the

---

[3] Gretchen C. Ackerman, Note, *An Analysis of Whether Aliens Should be Required to Exhaust Local Remedies Before Suing in the United States*, 7 WASH. UNIV. GLOB. STUD. L. REV.543 (3).

TVPA (trafficking) statute. Consequently, this Court may look further than the mere statutory text of the TVPA (trafficking) statute to resolve the issue.

A more detailed inquiry reveals that the TVPA (trafficking) statute contains an implicit exhaustion requirement. First, standard international norms require that an exhaustion requirement be read into the TVPA (trafficking) statute. "[B]asic principles of international law require that before asserting a claim in a foreign forum, the claimant must have exhausted any remedies available in the domestic legal system, and perhaps in other for a such as international claims tribunals." Sosa v. Alvarez-Machain, 542 U.S. 692, 733 (2004). Further, the Ninth Circuit has applied an exhaustion requirement to claims under the Alien Tort Statute, even though, like here, it contained no explicit exhaustion requirement in its statutory text. Sarei v. Rio Tinto, PLC, 550 F.3d 822, 827, 832 (9th Cir. 2008) (en banc).

Moreover, Plaintiffs state that in Brazil "the laws for prosecuting the traffickers and protecting the victims are weak[.]" In support, they cite the 2012 Trafficking in Persons Report, which notes that "there were no reported prosecutions … of child sex tourists" [in Brazil] in the past year.[22] (Doc.59, P.22). Yet, as Plaintiffs' counsel is well aware, there was a pending criminal prosecution of child sex tourists against Defendants in Brazil in 2011 (Case No. 2007.32.00.005820-7)(Doc.6).

As such, Plaintiffs' argument against imposing an exhaustion requirement in this case is without merit. Further, Plaintiffs have completely failed to respond to Defendants' forum non conveniens argument. Therefore, Plaintiffs' Complaint must be dismissed.

## Conclusion

**WHEREFORE**, for the reasons set out herein above, Defendants respectfully request this Court dismiss Plaintiffs' Complaint.

Respectfully submitted this 19th day of May, 2014.

s/ L. David Wolfe
L. David Wolfe, P.C
Georgia Bar No. 773325
Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| **PLAINTIFF A, PLAINTIFF B,** <br> **PLAINTIFF C, and PLAINTIFF D,** <br><br> **Plaintiffs** <br><br> v. <br><br> **RICHARD WAYNE SCHAIR and** <br> **WET-A-LINE TOURS, LLC,** <br><br> **Defendants.** | **CIVIL ACTION NO.** <br> **2:11-CV-00145-WCO** |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of Defendants' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS upon the following individual by electronic filing, which will automatically send email notification of such filing to the following:

**John W. Harbin**
1180 Peachtree Street
Atlanta, Georgia 30309
404-572-4600
jharbin@kslaw.com

This the 19th day of May, 2014.

Respectfully submitted,

s/ L. David Wolfe_____
L. David Wolfe, P.C.
Georgia Bar No. 773325
Attorney for Defendants

L. David Wolfe, P.C. • 101 Marietta Street, N.W. • Suite 3325 • Atlanta, GA 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

15