IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| PLAINTIFF A, PLAINTIFF B, PLAINTIFF C, and PLAINTIFF D, | : : : |
| Plaintiffs, | : : |
| v. | : CIVIL ACTION : NO. 2:11-cv-00145-WCO : |
| RICHARD WAYNE SCHAIR and WET-A-LINE TOURS, LLC, | : : : |
| Defendants. | : |

## ORDER

Four young Brazilian women allege that defendants induced or coerced them into performing sex acts when the women were under the age of eighteen. Plaintiffs, all minors at the time of the incidents alleged in the complaint, contend that defendants engaged in "sex tourism" while on fishing tours in Brazil. Plaintiffs claim that defendants coerced them into performing sex acts with defendant Schair and defendants' customers. Plaintiffs maintain that defendants' actions violated the Trafficking Victims Protection Act of 2003 ("TVPA"), which prohibits the use of "coercion" to cause a minor to engage in a commercial sex act. 18 U.S.C. § 1591(a).

Defendants filed a motion for judgment on the pleadings [58]. Defendants claim that they are not liable under the version of the TVPA in effect at the time of the conduct alleged. The statute, originally enacted in 2001, has been amended several times–most substantially in 2008 as part of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Defendants emphasize that the trafficking activity alleged in the complaint took place in Brazil from 2005 through 2006, so their conduct must be assessed under the TVPA, not the TVPRA. Defendants conclude that they are not liable under the TVPA, which has a heavier *mens rea* burden than the TVPRA and does not authorize enterprise liability.

The court independently raised a separate but related concern. The court noted that the original TVPA did not contain a provision authorizing the extraterritorial application of the statute; the statute was limited to trafficking activity "in or affecting interstate or foreign commerce." *See* 18 U.S.C. § 1591(a)(1) (2003). Congress subsequently amended the TVPA to expressly authorize extraterritorial jurisdiction. *See* 18 U.S.C. § 1596(a) (2008). This amendment gave the court pause; "[i]t is a 'longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (quoting *EEOC v. Arabian Am. Oil Co.* (*Aramco*), 499 U.S. 244, 248 (1991)). Here, where all

of the alleged trafficking acts occurred in Brazil prior to 2008, the court was unsure whether plaintiffs had a viable claim. In an order setting a hearing on defendants' motion [63], the court asked the parties to address the following questions:

- Does plaintiffs' cause of action hinge on civil liability for acts committed outside the United States?
- If so, do plaintiffs rely on 18 U.S.C. § 1596(a) as the basis for imposing civil liability for these extraterritorial acts?
- If so, can defendants be liable for acts outside the United States based on the retroactive application of 18 U.S.C. § 1596(a)?

After considering the oral arguments and briefs of both parties, the court concludes that the TVPA does not impose liability for pre-2008 trafficking acts occurring entirely outside the United States. Because the acts described in the complaint took place in Brazil from 2005 through 2006, allowing plaintiffs to maintain a claim against defendants would constitute an impermissible retroactive application of a statute by increasing defendants' liabilities. *See Republic of Austria v. Altmann*, 541 U.S. 677, 694 (2004). Therefore, plaintiffs' claim against defendants must be dismissed.

**I. Jurisdiction and Standard of Review**

This court has jurisdiction pursuant to 18 U.S.C. § 1595(a), which allows the victim of a trafficking offense to bring a civil action against the perpetrator "in an appropriate district court of the United States." 18 U.S.C. § 1595(a).

Defendants bring their motion pursuant to Rule 12(c). The standard for evaluating a Rule 12(c) motion is indistinguishable from the standard used for a motion to dismiss under Rule 12(b)(6). *See Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996). Under either motion, the court must accept the facts in plaintiffs' complaint as true and view them in the light most favorable to plaintiffs. *See, e.g.*, *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002). With this standard in mind, the court finds the relevant facts to be as follows.

## II. Facts

Defendant Richard Schair ran a company called Wet-A-Line Tours; ostensibly, the company conducted fishing tours in Brazil. In practice, Schair used Wet-A-Line Tours as a means for his customers to engage in "sex tourism" during fishing tours in Brazil. (Compl. ¶ 3, ECF No. 1).

Schair had several employees in the Amazon area; part of their job was to go to a "social club" near the Amazon river and recruit young women to come back to defendants' boat. (*Id.* at ¶ 4). Once on the boat, the girls would be plied with alcohol and/or drugs and coerced into performing sex acts with Schair and his customers. (*Id.*).

The four plaintiffs in this case allege roughly identical conduct. Initially, the plaintiff would be approached by one of defendants' employees at a club and agree

to go on a boat ride. (*Id.* at ¶¶ 38, 42, 50, 55). Once on the boat, the plaintiff would be provided with alcohol, drugs, or both before being coerced into performing sex acts with defendant Schair or defendants' customers. (*Id.* at ¶¶ 38-39, 43-47, 51-52, 55-56). Afterwards, the plaintiff was paid a modest amount of money for the coerced sex acts. (*Id.* at ¶¶ 40, 48, 53, 57).

## III. Statutory Framework for Analyzing Trafficking Violations

Congress enacted the TVPA to combat human trafficking in all its forms. *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464, 1466 (2000). The TVPA embodies Congress' recognition that human trafficking is a "transnational crime with national implications." *Id.* The statute operates to deter trafficking on multiple fronts; the provision germane to this case is the civil remedy found in 18 U.S.C. § 1595(a).[1]

The TVPA's civil remedy operates in the same manner as the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Under both statutes, a plaintiff prevails by proving a qualifying "predicate act." For RICO claims, a qualifying

---

[1] An individual who is the victim of a violation may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participating in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.
18 U.S.C. § 1595(a).

predicate act is usually some form of fraud. For TVPA claims, a qualifying predicate act is some form of trafficking activity: forced labor, slavery-related trafficking or servitude, or sex trafficking of children by force or coercion. *See* 18 U.S.C. §§ 1589-91. If a trafficking victim establishes that the perpetrator engaged in trafficking activity, then the victim may recover damages and reasonable attorneys' fees. 18 U.S.C. § 1595(a).

In 2008, Congress amended the TVPA in several substantial aspects, all of which make it easier for victims of trafficking violations to bring civil suits. First, the civil remedy was expanded to include enterprise liability. Originally, the victim could recover only from *the perpetrator*; the TVPRA expanded the statute's deterring effect to include anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Second, Congress reduced the *mens rea* standard from "knowing" violations to "knowing" and "reckless disregard" violations. Third, Congress expanded the statute's reach to include extraterritorial jurisdiction for certain trafficking offenses. *See* 18 U.S.C. § 1596. Section 1596 authorizes extraterritorial jurisdiction over child sex trafficking offenses if the alleged offender is a national of the United States, an alien lawfully admitted for permanent residence, or is present in the United States. *Id.*

The immediate and case-dispositive question raised by these amendments is whether plaintiffs can maintain a civil suit against defendants for pre-2008 trafficking activity that occurred outside the United States. The court finds that plaintiffs cannot because defendants cannot be subject to the retroactive application of extraterritorial authorization.

**A. The TVPA Does Not Authorize Extraterritorial Jurisdiction**

The presumption against extraterritoriality is used to "discern whether an Act of Congress regulating conduct applies abroad." *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013) (citation omitted). An Act of Congress is presumed to apply only within the territorial jurisdiction of the United States absent an expression of contrary intent. *Morrison*, 561 U.S. at 255. Without some "clearly expressed" affirmative intention of Congress, the court "must presume [Congress] is primarily concerned with domestic conditions." *See id*. The presumption against extraterritoriality applies regardless of whether there is a risk of conflict between the American statute and a foreign law or the absence of foreign law to provide redress for an indisputably egregious wrong. *See id.* (citing *Sale v. Hatian Ctrs. Council, Inc.*, 509 U.S. 155, 173-74 (1993)). "When the statute gives no clear indication of an extraterritorial application, it has none." *Kiobel*, 133 S. Ct. at 1664 (quoting *Morrison*, 561 U.S. at 255).

### 1. *Adhikari* and Pre-2008 Trafficking Activity

Recently, a district court in the Southern District of Texas addressed whether TVPA plaintiffs could state a claim against several defendants for pre-2008 activity occurring outside the United States. *Adhikari v. Daoud & Partners*, 994 F. Supp. 2d 831 (S.D. Tex. 2014).

In *Adhikari*, plaintiffs claimed that defendants engaged in a scheme to traffic plaintiffs from Nepal to Iraq. *Id.* at 833. Defendants told plaintiffs that they would be working on a luxury hotel in Jordan, but plaintiffs were actually sent to Iraq to work in the Iraqi war zone on a United States military base. *Id.* at 834. All but one of the plaintiffs were captured and killed by a Sunni insurgent group. *Id.* The surviving plaintiff was required to turn over his passport and was not allowed to leave Iraq for fifteen months. *Id.*

Defendants moved for summary judgment on plaintiffs' TVPRA claim and argued that the TVPRA did not apply to pre-2008 trafficking acts outside the United States. The court reluctantly agreed.

The district court began by noting that the passage of § 1596 made the TVPA expressly extraterritorial in 2008. *Id.* at 835. The district court recognized that human trafficking raised "national and international concerns" but that the statute's "silence as to any extraterritorial application for these provisions weigh[ed] heavily in favor

of finding that Congress intended to legislate only within its own territorial jurisdiction." *See id.* at 836. As the district court correctly observed, the TVPA contained international components and solutions in other sections of the Act. *See id.* at 836-37 (reviewing internationally-oriented provisions in the TVPA). The district court concluded that "Congress's failure to indicate any extraterritoriality when it came to [the TVPA's] civil and criminal remedies stands in stark contrast to [the other provisions'] overtly international [focus]." *See Adhikari*, 994 F. Supp. 2d at 836.

### 2. Analysis

This court finds *Adhikari*'s analysis unfortunately correct. The 2003 TVPA lacks the "clear expression" of affirmative congressional intent necessary to displace the presumption against extraterritoriality. Nothing in the statute's text suggests that Congress intended the TVPA's civil remedy to apply extraterritorially. The TVPA's focus on an international problem–human trafficking–does not imply extraterritorial reach because trafficking violations can occur either within or outside the United States. *See Kiobel*, 133 S. Ct. at 1665. The TVPA lacks a "clear indication of extraterritoriality" and, consequently, claims based on conduct "occurring outside the United States" are not actionable absent some showing that the trafficking activity "touched and concerned" the United States. *See Kiobel*, 133 S. Ct. at 1669 (citations omitted). The magnitude of human trafficking alone is insufficient to displace the

presumption against extraterritoriality, and there is insufficient evidence to infer extraterritoriality from "the nature of the offense." *See Adhikari*, 994 F. Supp. 2d at 837 (quoting *United States v. Bowman*, 260 U.S. 94, 98 (1922)). "The international dimensions of the problems of trafficking and forced labor do not support a departure from the usual presumption against extraterritorial application . . . . Congress knows how to legislate with extraterritorial effect in this field. It has done so expressly when it has intended to do so." *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1002 (S.D. Ind. 2007).

Sections 1591 and 1595 differ markedly from statutes that courts have found to be extraterritorially applicable. Extraterritorially applicable statutes are usually expressly identified as such, *see, e.g.*, 21 U.S.C. § 959(c) (stating that this section "is intended to reach acts of manufacture or distribution [of controlled substances] committed outside the territorial jurisdiction of the United States"); 18 U.S.C. § 1956(f) (same for money laundering), or are so obviously oriented towards extraterritorial conduct that they would be effectively nullified if the statute were limited to domestic activity. *See, e.g.*, 18 U.S.C. § 2332(a) (criminalizing killing or attempting to kill a national of the United States "while such national is outside the United States"); 18 U.S.C. § 2423(b-c) (criminalizing traveling in foreign commerce for the purpose of engaging in illicit sexual activity).

Based on the lack of express congressional intent to globalize United States law and the continuing validity of §§ 1591 and 1595 if they were limited to domestic activity, the court must presume that the TVPA offers "purely national solutions" to human trafficking violations prior to the inclusion of express extraterritorial authorization. *See Adhikari*, 994 F. Supp. 2d at 836 (citation omitted).

In response, plaintiffs contend that the TVPA authorizes extraterritorial jurisdiction because the predicate trafficking offense found in § 1591 encompasses offenses "in or affecting interstate or *foreign* commerce." *See* 18 U.S.C. § 1591(a)(1) (2003) (emphasis added).

A general reference to foreign commerce does not defeat the presumption against extraterritoriality. The Supreme Court has repeatedly held that a statute's express application to acts committed in foreign commerce does not indicate a congressional design to give the statute extraterritorial effect. *See, e.g.*, *Morrison*, 561 U.S. at 262-63 (citing *Aramco*, 499 U.S. at 251)); *cf. Kiobel*, 133 S. Ct. at 1665 (declining to find that the Alien Tort Statute applied extraterritorially because the statute's text included the phrase "any civil action" because "it is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality"). The court has been unable to locate a single civil case post-*Morrison* that found a statute to be extraterritorially applicable based on the statute's

inclusion of the phrase "foreign commerce."[2] To the contrary, many lower courts have found identical language in similar statutes does not authorize extraterritorial application.

For example, RICO provides that it is unlawful for persons to engage in racketeering activity by directly or indirectly controlling "any enterprise which is engaged in, or the activities of which affect, interstate or *foreign commerce*." 18 U.S.C. § 1962(a-b) (emphasis added). Although the jurisdictional call of the statute references foreign commerce, every post-*Morrison* court tasked with determining

---

[2] Notably, several circuit courts, including the Eleventh Circuit, have found that a reference to "foreign commerce" authorizes the extraterritorial application of *criminal statutes* in *criminal actions* by the government. *See, e.g.*, *United States v. Frank*, 599 F.3d 1221, 1231 (11th Cir. 2010) ("[E]xtraterritorial application is supported by the nature of [a child pornography statute] and Congress's other efforts to combat child pornography."); *United States v. Belfast*, 611 F.3d 783, 813-14 (11th Cir. 2010) (concluding that defendant's conviction for using and carrying a firearm under 18 U.S.C. § 924(c) while committing acts of torture abroad was valid despite the absence of express extraterritorial authorization). *But see United States v. Chao Fan Xu*, 706 F.3d 965, 975 (9th Cir. 2013) (applying *Morrison*'s presumption against extraterritoriality in a criminal RICO action); *United States v. Martinelli*, 62 M.J. 52, 59-60 (C.A.A.F. 2005) (declining to extraterritorially apply a child pornography statute that included the term "foreign commerce"). The court finds these cases unconvincing because they effectively create two different statutes depending on whether the action is civil or criminal, and the distinction creates particularly bizarre results in hybrid criminal/civil statutes like RICO and the TVPA. Many of these cases stand on dubious ground post-*Kiobel*, and even if those decisions remained good law, the court is not bound to extend their applicability from criminal cases by the government to civil cases between private parties.

12

whether RICO applied extraterritorially has found that the statute does not. *See, e.g.*, *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 32-33 (2d Cir. 2010); *Mitui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F. Supp. 2d 933, 939 (N.D. Cal. 2012) (collecting cases).[3]

Plaintiffs also argue that their claim should survive because defendants' financial gains from the trafficking activity occurred in the United States. Plaintiffs highlight that defendants were based in Gainesville, Georgia and solicited customers from inside the United States.

That is not enough. "It is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States," *Norex*, 631 F.3d at 29 (citation and internal quotation marks omitted), and "the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." *Morrison*, 561 U.S. at 266. Here, defendants' Brazilian employees solicited Brazilian minors during fishing tours in Brazil. Defendants' connections to the United States do not change

---

[3] Recently, the Second Circuit held that RICO *may* be applied extraterritorially if the predicate statutes are extraterritorial. *European Cmty. v. RJR Nabisco, Inc.*, 2014 WL 4085863, at *4 (2d Cir. April 23, 2014). This holding does not change the validity of the court's analysis because the predicate statute here–Section 1591–does not contain extraterritorial language. To the contrary, this decision supports the court's holding because the Second Circuit implicitly recognized that something more than a reference to foreign commerce is necessary to justify a statute's extraterritorial application.

the "essentially foreign" nature of this case. *See Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 164-68 (D.D.C. 2013) (finding that a RICO claim lacked sufficient ties to the United States despite the involvement of two United States citizens, a domestic corporation, some decision making from inside the United States, and money laundering involving bank accounts in the United States); *United States v. Philip Morris USA, Inc.*, 783 F. Supp. 2d 23, 25, 29-31 (D.D.C. 2011) ("[I]solated domestic conduct does not permit RICO to apply to what is essentially foreign activity."). *Morrison* teaches that the extraterritoriality inquiry should center around "the 'focus' of congressional concern" in enacting the statute. *See Morrison*, 561 U.S. at 266 (interpreting *Aramco*, 499 U.S. at 247). The court finds that the TVPA's central focus is on the act of trafficking itself, not wherever the benefits of trafficking activity may accrue.[4] *Cf. Cedeño v. Castillo*, 457 F. App'x 35, 37-38 (2d Cir. 2012) (holding that a plaintiff's civil RICO claim was barred because the domestic predicate acts had no relationship between the injury asserted and the injurious conduct alleged) (citations

---

[4] That is not to say that pre-2008 trafficking activity outside the United States is *per se* unactionable under the statute. Rather, the court reads the Supreme Court's jurisprudence to require something more than a perpetrator's presence in the United States and/or proceeds returning to the United States after committing trafficking activity abroad. *Cf. European Cmty. v. RJR Nabisco, Inc.*, 2014 WL 4090544, at *1-2 (2d Cir. Aug. 20, 2014) (declining to import a "domestic injury" requirement into RICO in favor of making RICO's extraterritorial applicability "coextensive with the extraterritorial application of the relevant predicate statutes").

omitted); *see also Republic of Iraq v. ABB AG*, 920 F. Supp. 2d 517, 543 (S.D.N.Y. 2013) ("[P]eripheral contacts with the United States–up to and including the use of a domestic bank account–do not bring an otherwise foreign scheme within the reach of the RICO statutes.") (citation omitted); *Philip Morris*, 783 F. Supp. 2d at 29 (rejecting attempts to premise a RICO claim on domestic conduct when the "domestic conduct was not the basis for [the defendant's] RICO liability in this case"). When the prohibited trafficking activity occurred entirely outside the United States, defendants must engage in more substantial domestic actions to facilitate trafficking activity than merely residing in the United States.

Notably, as plaintiffs conceded during oral argument, there is no indication that defendants solicited customers in the United States by advertising that the tours included sex acts with minors. Plaintiffs do not contend that defendants received additional funding in the United States for the trafficking activity in Brazil or that the trafficking activity was the primary purpose of the fishing tours. Instead, plaintiffs conceded that the trafficking activity was an "incidental activity" that occurred *during* fishing tours.

Therefore, the court holds that §§ 1591 and 1595 are not extraterritorially applicable. The provisions bear no express indication of congressional intent to

extend the statute's reach outside the United States, and the alleged conduct does not bear a sufficient nexus to the United States to label defendants' activity in Brazil as a domestic application of the statute.

**B. The Presumption Against Retroactivity Prohibits the Retroactive Application of § 1596**

Plaintiffs could salvage their claim if section 1596 could be retroactively applied. Plaintiffs, however, do not contend that the extraterritorial amendment is retroactively applicable and, even if they did, the court finds that section 1596 cannot be retroactively applied to create a claim against defendants.

The presumption against retroactivity bars the retroactive application of a statute to conduct that occurred before its passage without clear congressional approval. *Adhikari*, 994 F. Supp. 2d at 838 (citing *Landgraf v. USI Films Prods.*, 511 U.S. 244, 268 (1994)). A statute retroactively modifies a party's rights if the modification yields a substantive, rather than procedural, change in the party's rights or liabilities. *See id.* (citing *Republic of Austria v. Altmann*, 541 U.S. 677, 694 (2004)). The presumption precludes the application of a later-enacted statute or amendment if doing so "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* (quoting *Landgraf*, 511 U.S. at 280).

16

Section 1596 cannot be retroactively applied because the statute affects defendants' substantive rights. "By expanding the reach of the TVPRA to purely extraterritorial conduct, Section 1596 has increased the potential liability of defendants for past conduct." *See id.* at 839. Therefore, Congress's subsequent "conferral of extraterritorial jurisdiction affects more than mere procedure and is barred by the presumption against retroactivity." *Id.*

**IV. Conclusion**

Plaintiffs seek to hold a domestic corporation and a national of the United States liable for trafficking activity that occurred in Brazil. Their TVPA claim is not viable because the trafficking activity alleged does not bear a sufficient nexus to the United States to consider the acts alleged "domestic" and, therefore, actionable prior to the passage of the TVPRA and Section 1596 in 2008. At the time of the conduct alleged in the complaint, the TVPA did not expressly authorize extraterritorial application and is not rendered entirely void by limiting the statute to domestic trafficking activity. The court cannot retroactively apply section 1596 because the provision modifies defendants' substantive defenses and liabilities under the TVPA. Therefore, plaintiffs cannot maintain a viable TVPA claim against defendants.

Defendants' motion to dismiss [58] is hereby **GRANTED**. Plaintiffs' complaint [1] is hereby **DISMISSED**.

IT IS SO ORDERED, this 9th day of September, 2014.

s/*William C. O'Kelley*
William C. O'Kelley
Senior United States District Judge